## UNITED STATES v. FORRESTER et al.
### No. 19290.

United States District Court, N.D. Georgia,
Atlanta Division.
Feb. 29, 1952.

J. Ellis Mundy and Lamar N. Smith, U. S. Atty. and Asst. U. S. Atty., for plaintiff.

Wesley R. Asinoff and J. O. Ewing, Atlanta, Ga., for defendants.

HOOPER, Chief Judge.

The three defendants in this case have filed a motion to dismiss the two-count indictment upon the ground that the statutes. upon which same are based violate their rights to immunity from self-incrimination guaranteed by the Fifth Amendment to the United States Constitution. Count One charges in part that defendants "did unlawfully, willfully and knowingly engage in the business of accepting wagers and conducting a lottery for a profit without paying the special tax as required by Section

3290 of the Internal Revenue Code * * in violation of Section 2707 of Title 26 U.S.C.A." Count Two charges in part that defendants "did unlawfully, willfully and knowingly engage in the business of accepting wagers and conducting a lottery for a profit without registering with the collector of internal revenue as required by Section 3291 of the Internal Revenue Code."

Sections 3285, 3290, 3291 and 3297 of the Internal Revenue Code were added by the Revenue Act of the 82nd Congress, 1951, § 471(a) for text see United States Code Congressional Service 1951, 82nd Congress, Vol. I, page 419 et seq. These new sections are contained in a new chapter, known as Chapter 27A entitled "Wagering Taxes" and subchapters A, B, C, entitled "Tax on Wagers", "Occupational Tax," and "Miscellaneous Provisions."

Section 3285 imposes an excise tax of ten per cent on wagers, that term expressly including lotteries. Operation of lotteries is made penal by Georgia Code, § 26–6502.

Section 3290 provides that a tax of $50 per year "shall be paid by each person who is liable for tax under subchapter A, or who is engaged in receiving wagers for or on behalf of any person so liable."

Section 3291 provides that "each person required to pay a special tax under this subchapter shall register with the collector of the district—(1) his name and place of residence, (2) if he is liable for tax under subchapter A, each place of business where the activity which makes him so liable is carried on, and the name and place of residence of each person who is engaged in receiving wagers for him or on his behalf; and (3) if he is engaged in receiving wagers for or on behalf of any person liable for tax under subchapter A, the name and place of residence of each such person."

Section 3297 provides that "the payment of any tax imposed by this chapter with respect to any activity shall not exempt any person from any penalty provided by a law of the United States or of any State for engaging in the same activity, nor shall the payment of any such tax prohibit any State from placing a tax on the same activity for State or other purposes."

The motion to dismiss the indictment contains the following:

"Both counts of the indictment are based upon an act of congress which was enacted in violation of the Constitution of the United States, insofar as the act required the taxpayer to register with the collector of his district information pertaining to the address of the place of business where the lottery is carried on, the name and place of residence of each person who is engaged in receiving wagers for him, or on his behalf, and the names and places of residence of the several persons constituting the firm or company; the said act of congress thereby requiring the taxpayer, under the penalty of fine and imprisonment, to furnish evidence which would be sufficient in itself, or as the connecting link in a chain of circumstances, to incriminate the taxpayer under the laws of the state wherein said alleged lottery is being carried on, and insofar as said act requires any person to so register those incriminating facts with the collector of his district, it contravenes Article V of the Amendments to the Constitution of the United States which provides that: No person * * * shall be compelled in any criminal case to be a witness against himself * * *."

Movant contends that neither Section 3290 nor Section 3291 contain any immunity to bar incriminating evidence furnished by a compliance therewith. That such omission was intended by Congress is made manifest by the provisions of Section 3297 quoted above. This court cannot adopt the suggestion made by the able counsel for the government that proof of compliance with this statute by a defendant would not tend to incriminate him when tried in a state court for a violation of the wagering or lottery laws of a state, nor the other suggestion that the motion to dismiss is premature and should be reserved until the trial of the case after evidence has been introduced. The constitutional question raised must therefore be decided now.

■ 1–The statute complained of is a federal statute, compliance with which will tend to incriminate. one under state laws, but not under federal laws. Consequently, the statute does not violate the constitutional safeguards against self-incrimination provided by the Fifth Amendment to the United States Constitution. Among cases so ruling is that of United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 64, 76 L.Ed. 210, where it is ruled that a witness in a federal investigation may not refuse to give information upon the ground that disclosure may lead to prosecution by a state. That ruling is made, said the court, because: "The English rule of evidence against compulsory self-incrimination, on which historically that contained in the Fifth Amendment rests, does not protect witnesses against disclosing offenses in violation of the laws of another country." Professor Wigmore has stated the rule as follows.:

"It is not in the power or duty of one State, or of its Courts, to be concerned in the. criminal law of another State. For the former, there is but one law, and that is its own. The boundaries of our Constitution and our sovereignty are coextensive. A constitution is intended to protect the accused against the methods of its own jurisdiction and no other. The Court's view, as well as its functions, should be confined to its own organic sphere." Wigmore on Evidence, Vol. III, p. 338, Sec. 2258.

■ 2– The government also insists that. "the privilege against self-incrimination has no logical application to Sections 3290 and 3291 of the Internal Revenue Code. The privilege against self-incrimination relates only to past acts. Citing 8 Wigmore on Evidence, Sec. 2259(c). As pointed out by Judge Cardozo in the case of E. Fougera & Company, Inc. v. City of New York, 224 N.Y. 269, 120 N.E. 642, 643, 1 A.L.R. 1467, "one who engages in it (referring to an enterprise illegal under state laws) is not compelled by this ordinance to expose himself to punishment for any offense already committed. He is simply notified of the conditions upon which he may do business in the future. He makes his own

choice. To such a situation, the privilege against self-accusation has no just application."

■ 3– Defense counsel has very forcefully pointed out the unfortunate predicament in which this statute leaves persons engaged in the business of wagers and lotteries. With that we agree. That Congress intended such results would perhaps not be a wild supposition. However, "inquiry into the hidden motives which may move Congress to exercise a power constitutionally conferred upon it is beyond the competency of courts." Sonzinsky v. United States, 300 U.S. 506, at page 513, 57. S.Ct. 554, at page 556, 81 L.Ed. 772.

The Committee on Ways and Means to which was referred House Resolution No. 4473 upon which the above statute was based, made the following report:

"G.—Excise on Gambling

"Commercialized Gambling holds the unique position of being a multi-billion dollar Nation-wide business that has remained comparatively free from taxation by either State or Federal Governments. This relative immunity from taxation has persisted in spite of the fact that wagering has many characteristics which make it particularly suitable as a subject for taxation. Your committee is convinced that the continuance of this immunity is inconsistent with the present need for increased revenue especially at a time when many consumers items of a semi-necessity nature are being called upon to bear new or additional tax burdens * * *. Since its inception, the Federal income tax has applied without distinction to income from illegal as well as legal sources and it has never been generally supposed that such application carried with it any implied authorization to carry on illegal activities * * *. The committee conceives of the Occupational Tax as an integral part of any plan for the taxation of wagers and as essential to the collection and enforcement of such a tax. Enforcement of a tax on wagers frequently will necessitate the tracing

of transactions through complex business relationships * * *. For this reason, the bill provides that a person who pays the Occupational Tax, must, as part of his registration identify those persons who are engaged in receiving wagers for or on his behalf and, in addition, identify the persons on whose behalf he is engaged in receiving wagers."

It is quite evident that persons subject to this tax may not refuse to register and pay the tax as required by the Act of Congress merely upon the ground that they are also violating the laws of any particular state.

For reasons above set forth, motion to dismiss this indictment will be overruled and denied.