## UNITED STATES v. KAHRIGER.
### No. 16672.

United States District Court
E. D. Pennsylvania.
May 6, 1952.

Gerald A. Gleeson, U. S. Atty., Philadelphia, Pa., for plaintiff.

Jacob Kossman, Philadelphia, Pa., for defendant.

WELSH, District Judge.

The defendant, Joseph Kahriger, was proceeded against criminally by Information filed on March 17, 1952. The Information alleged that the defendant was in the business of accepting wagers and that he willfully failed to register for and pay the occupational tax as required by the Act of October 20, 1951, C. 521, Title IV, Sec. 471(a), 65 Stat. 529, 26 U.S.C. §§ 3290 and 3291. The defendant has filed a Motion to Dismiss the Information on the ground that the law is unconstitutional for various reasons set forth in his briefs. The question presents many features in connection with taxation that have been the subject of dispute and decisions for the Appellate Courts of the land. At the outset, we decide to recognize the principle that the power of the Congress of the United States to levy taxes is and should be free from judicial control unless the fundamentals of the Constitution of the United States are violated. We recognize the exclusive power of the Congress in the field of legislative enactment, and we recognize it as the only vehicle to express the judgment of our people on the delicate matter of finance. We also are scrupulously meticulous in confining to the Judiciary their peculiar and limited responsibilities in interpreting such legislation. This concept of the judiciary however, requires a recognition of the fact that while the judiciary can express no opinion as to the wisdom of tax legislation or any motives that might have prompted such legislation, the Judiciary has the sacred responsibility of guarding the people against invasion of constitutional rights and protecting the States from an invasion of their Sovereign rights under the guise of taxation when the constitutional safeguards are endangered.

A careful consideration of the cases cited in the briefs submitted by both sides convinces this Court that the subject matter of this legislation so far as revenue purposes is concerned is within the scope of Federal authorities. In other words it is quite clear that the revenue objective of the legislation in question is clearly within the scope of the powers of Congress to express. We desire to say that at the outset, because if there was nothing more to the case than the question of vagueness of the tax, and the discriminatory nature of the tax, the defendant's position would be untenable. But the legislation goes much further than a piece of taxing legislation. It imposes a tax deemed by the Congress

fair and reasonable, exempts certain types of wagering and wagerers, which to Congress seemed wise, and requires certain information which appear to be constitutionally legitimate. This, we think, fairly summarizes the revenue and taxing features of the legislation. If it stopped there the legislation would undoubtedly be sound, but it does not stop there.

When the Act departed from the field of taxable legislation and went into the field of morals and invaded the sanctuary of State control it then became and now is the subject of judicial inspection. In the remarks that we feel constrained to make on this measure we feel it our duty, due to the critical conditions prevailing in our social life of today, to say that we recognize the high purposes of the Congress to curb a present and a growing evil. A person would indeed be blind today if he were not to recognize that the great increase in gambling and forms of related vice has reached a stage that unless controlled or curtailed will undermine the very pillars of our social order and sap the very lifeblood of our National body. We are convinced from our long contact with the Congress and its members that they must have been appalled by the conditions existing, especially in our big cities, by the revelations of their own congressional investigations. .

Now, notwithstanding the laudable and even holy purposes to curb this growing evil, had they the right under the guise of a taxing power to also require that certain information be furnished which is peculiarly applicable to the applicant from the standpoint of law enforcement and vice control? The applicant for registration among many things is required to give the names of other persons, both real and alias, or style, with address of business and residence. Failure to give this information and to comply with the law in certain respects would subject the applicant to a fine of ten thousand dollars ($10,000) and an imprisonment of five (5) years. This feature of the legislation is presented to throw light on the question as to whether this portion of the measure is a tax bill or a police measure. Is the purpose of the Act and delegation of bureaucratic powers to create revenue or to constitute a host of informers?

In addressing ourselves to the above question we found it necessary to consult the many decisions submitted to us by the parties and those suggested by our own research. A review of the cases serves to throw light upon the progressive character of our revenue laws and reveals the influence brought upon the Congress and the Courts by the economic conditions of the various periods of our development. They clearly show, as in the case of the Firearms Act, 15 U.S.C.A. § 901 et seq. and the legislation on oleomargarine, and various excise taxes, the impingement of industrial and economic pressure. It would be unwise to give any particular case as a complete authority on the subject without considering the background of each particular case. As we have said, the history of the Act involved in this case has been progressive. But it seems to us that the case which most clearly reveals the silver thread of truth as contained in the decisions is to be found in the case of United States v. Constantine, 296 U.S. 287, 56 S.Ct. 223, 226, 80 L.Ed. 233, decided by the United States Supreme Court on December 9, 1935. That case was one wherein the Federal Government levied what the Court declared to be a valid federal excise tax on retail liquor dealers. The excise tax was twenty-five dollars ($25.00) but the amended Act imposed a special excise tax of one thousand dollars ($1,000) on such dealers when they carry on the business contrary to local, state or municipal laws and provided a *fine* and *imprisonment* for failure to pay. (It will be observed that the 18th Amendment to the Constitution was then in force.)

We quote, in part, from the opinion of Mr. Justice Roberts in the above case, United States v. Constantine, as follows:

> "In the acts which have carried the provision, the item is variously denominated an occupation tax, an excise tax, and a special tax. If in reality a penalty it cannot be converted into a tax by so naming it, and we must ascribe to it the character disclosed by its pur-

pose and operation, regardless of name. Disregarding the designation of the exaction, and viewing its substance and application, we hold that it is a penalty for the violation of state law, and as such beyond the limits of federal power.

\*    \*    \*    \*    \*    \*

"The condition of the imposition is the commission of a crime. This, together with the amount of the tax, is again significant of penal and prohibitory intent rather than the gathering of revenue. Where, in addition to the normal and ordinary tax fixed by law, an additional sum is to be collected by reason of conduct of the taxpayer violative of the law, and this additional sum is grossly disproportionate to the amount of the normal tax, the conclusion must be that the purpose is to impose a penalty as a deterrent and punishment of unlawful conduct.

"We conclude that the indicia which the section exhibits of an intent to prohibit and to punish violations of state law as such are too strong to be disregarded, remove all semblance of a revenue act and stamp the sum it exacts as a penalty. In this view the statute is a clear invasion of the police power, inherent in the states, reserved from the grant of powers to the federal government by the Constitution.

"We think the suggestion has never been made—certainly never entertained by this Court—that the United States may impose cumulative penalties above and beyond those specified by state law for infractions of the state's criminal code by its own citizens. The affirmation of such a proposition would obliterate the distinction between the delegated powers of the federal government and those reserved to the states and to their citizens. The implications from a decision sustaining such an imposition would be startling. *The concession of such of a power would open the door to unlimited regulation of matters of state concern by federal authority.* The regulation of the conduct of its own citizens belongs to the state, not to the United States. The right to impose sanctions for violations of the state's laws inheres in the body of its citizens speaking through their representatives. \*   \*   \*

"Reference was made in the argument to decisions of this Court holding that where the power to tax is conceded the motive for the exaction may not be questioned. These are without relevance to the present case. The point here is that the exaction is in no proper sense a tax but a penalty imposed in addition to any the state may decree for the violation of a state law. The cases cited dealt with taxes concededly within the realm of the federal power of taxation. *They are not authority where, as in the present instance, under the guise of a taxing act the purpose is to usurp the police powers of the state.*" (Emphasis supplied.)

No language that we could use would more clearly or more forcefully express the law of the land on this subject. In addition to its being the pronouncement of the Supreme Court of the land on the principle involved, and by which we are bound, we find ourselves in full accord with it, both in letter and in spirit. Today, the simplicity of our former way of life has largely disappeared. Our economic enterprises are myriad. While the desire to curb the underworld activities is a wholesome tribute to our fundamental aspirations, if the fundamental principles claimed by the federal government in this particular case were given the highest Judicial approval, future acts of Government in a field not so free from improper motives, would enable the Central Government to regulate our lives from the cradle to the grave. The remedy would be far worse than the disease.

The motion to dismiss is granted.