# UNITED STATES *v.* KAHRIGER.

No. 167.   Argued December 16–17, 1952.—Decided March 9, 1953.

*Robert L. Stern* argued the cause for the United States. With him on the brief were *Solicitor General Cummings, Assistant Attorney General Murray* and *Beatrice Rosenberg*. *Philip B. Perlman*, then Solicitor General, was on the Statement as to Jurisdiction.

*Jacob Kossman* argued the cause and filed a brief for appellee.

*Archie Elledge* and *Joe W. Johnson* filed a brief for Penn et al., as *amici curiae*, supporting appellee.

MR. JUSTICE REED delivered the opinion of the Court.

The issue raised by this appeal is the constitutionality of the occupational tax provisions of the Revenue Act of 1951,[1] which levy a tax on persons engaged in the business of accepting wagers, and require such persons to register with the Collector of Internal Revenue. The unconstitutionality of the tax is asserted on two grounds.

---

[1] 26 U. S. C. (Supp. V) § 3285:

"(a) Wagers.

"There shall be imposed on wagers, as defined in subsection (b), an excise tax equal to 10 per centum of the amount thereof.

.          .          .          .          .

"(d) Persons liable for tax.

"Each person who is engaged in the business of accepting wagers shall be liable for and shall pay the tax under this subchapter on all wagers placed with him. Each person who conducts any wagering pool or lottery shall be liable for and shall pay the tax under this subchapter on all wagers placed in such pool or lottery.

"(e) Exclusions from tax.

"No tax shall be imposed by this subchapter (1) on any wager placed with, or on any wager placed in a wagering pool conducted by, a parimutuel wagering enterprise licensed under State law, and.

First, it is said that Congress, under the pretense of exercising its power to tax has attempted to penalize illegal intrastate gambling through the regulatory features of the Act (26 U. S. C. (Supp. V) § 3291) and has thus infringed the police power which is reserved to the states. Secondly, it is urged that the registration provisions of the tax violate the privilege against self-incrimination and are arbitrary and vague, contrary to the guarantees of the Fifth Amendment.

The case comes here on appeal, in accordance with 18 U. S. C. § 3731, from the United States District Court

---

(2) on any wager placed in a coin-operated device with respect to which an occupational tax is imposed by section 3267."

26 U. S. C. (Supp. V) § 3290:

"A special tax of $50 per year shall be paid by each person who is liable for tax under subchapter A or who is engaged in receiving wagers for or on behalf of any person so liable."

26 U. S. C. (Supp. V) § 3291:

"(a) Each person required to pay a special tax under this subchapter shall register with the collector of the district—

"(1) his name and place of residence;

"(2) if he is liable for tax under subchapter A, each place of business where the activity which makes him so liable is carried on, and the name and place of residence of each person who is engaged in receiving wagers for him or on his behalf; and

"(3) if he is engaged in receiving wagers for or on behalf of any person liable for tax under subchapter A, the name and place of residence of each such person."

26 U. S. C. (Supp. V) § 3294:

"(a) Failure to pay tax.

"Any person who does any act which makes him liable for special tax under this subchapter, without having paid such tax, shall, besides being liable to the payment of the tax, be fined not less than $1,000 and not more than $5,000.

. . . . .

"(c) Willful violations.

"The penalties prescribed by section 2707 with respect to the tax imposed by section 2700 shall apply with respect to the tax imposed by this subchapter."

for the Eastern District of Pennsylvania, where an information was filed against appellee alleging that he was in the business of accepting wagers and that he willfully failed to register for and pay the occupational tax in question. Appellee moved to dismiss on the ground that the sections upon which the information was based were unconstitutional. The District Court sustained the motion on the authority of our opinion in *United States* v. *Constantine,* 296 U. S. 287. The court reasoned that while "the subject matter of this legislation so far as revenue purposes is concerned is within the scope of Federal authorities," the tax was unconstitutional in that the information called for by the registration provisions was "peculiarly applicable to the applicant from the standpoint of law enforcement and vice control," and therefore the whole of the legislation was an infringement by the Federal Government on the police power reserved to the states by the Tenth Amendment. *United States* v. *Kahriger,* 105 F. Supp. 322, 323.

The result below is at odds with the position of the seven other district courts which have considered the matter,[2] and, in our opinion, is erroneous.

In the term following the *Constantine* opinion, this Court pointed out in *Sonzinsky* v. *United States,* 300 U. S. 506, at 513 (a case involving a tax on a "limited class" of objectionable firearms alleged to be prohibitory in effect and "to disclose unmistakably the legislative

[2] *United States* v. *Smith,* 106 F. Supp. 9 (D. C. S. D. Cal.); *United States* v. *Nadler,* 105 F. Supp. 918 (D. C. N. D. Cal.); *United States* v. *Forrester,* 105 F. Supp. 136 (D. C. N. D. Ga.); *United States* v. *Robinson,* 107 F. Supp. 38 (D. C. E. D. Mich.); *United States* v. *Arnold, Jordan, and Wingate,* No. 478 (D. C. E. D. Va.), September 18, 1952; *United States* v. *Penn,* No. 2021 (D. C. M. D. N. C.), May 1952; *Combs* v. *Snyder,* 101 F. Supp. 531 (D. D. C.), affirmed, 342 U. S. 939.

purpose to regulate rather than to tax"), that the subject of the tax in *Constantine* was "described or treated as criminal by the taxing statute." The tax in the *Constantine* case was a special additional excise tax of $1,000, placed only on persons who carried on a liquor business in violation of state law. The wagering tax with which we are here concerned applies to all persons engaged in the business of receiving wagers, regardless of whether such activity violates state law.

The substance of respondent's position with respect to the Tenth Amendment is that Congress has chosen to tax a specified business which is not within its power to regulate. The precedents are many upholding taxes similar to this wagering tax as a proper exercise of the federal taxing power. In the *License Tax Cases,* 5 Wall. 462, the controversy arose out of indictments for selling lottery tickets and retailing liquor in various states without having first obtained and paid for a license under the Internal Revenue Act of Congress. The objecting taxpayers urged that Congress could not constitutionally tax or regulate activities carried on within a state. P. 470. The Court pointed out that Congress had "no power of regulation nor any direct control" (5 Wall., at 470, 471) over the business there involved. The Court said that, if the licenses were to be regarded as by themselves giving authority to carry on the licensed business, it might be impossible to reconcile the granting of them with the Constitution. P. 471.

> "But it is not necessary to regard these laws as giving such authority. So far as they relate to trade within State limits, they give none, and can give none. They simply express the purpose of the government not to interfere by penal proceedings with the trade nominally licensed, if the required taxes are paid. The power to tax is not questioned, nor

the power to impose penalties for non-payment of taxes. The granting of a license, therefore, must be regarded as nothing more than a mere form of imposing a tax, and of implying nothing except that the licensee shall be subject to no penalites under national law, if he pays it." *Id.*, at 471.

Appellee would have us say that, because there is legislative history [3] indicating a congressional motive to suppress wagering, this tax is not a proper exercise of such taxing power. In the *License Tax Cases, supra,* it was admitted that the federal license "discouraged" the activities. The intent to curtail and hinder, as well as tax, was also manifest in the following cases, and in each of them the tax was upheld: *Veazie Bank* v. *Fenno,* 8 Wall. 533 (tax on paper money issued by state banks); *McCray* v. *United States,* 195 U. S. 27, 59 (tax on colored oleomargarine); *United States* v. *Doremus,* 249 U. S. 86, and *Nigro* v. *United States,* 276 U. S. 332 (tax on narcotics); *Sonzinsky* v. *United States,* 300 U. S. 506 (tax on firearms); *United States* v. *Sanchez,* 340 U. S. 42 (tax on marihuana).

---

[3] There are suggestions in the debates that Congress sought to hinder, if not prevent, the type of gambling taxed. See 97 Cong. Rec. 6892:

"Mr. HOFFMAN of Michigan. Then I will renew my observation that it might if properly construed be considered an additional penalty on the illegal activities.

"Mr. COOPER. Certainly, and we might indulge the hope that the imposition of this type of tax would eliminate that kind of activity." 97 Cong. Rec. 12236: "If the local official does not want to enforce the law and no one catches him winking at the law, he may keep on winking at it, but when the Federal Government identifies a law violator, and the local newspaper gets hold of it, and the local church organizations get hold of it, and the people who do want the law enforced get hold of it, they say, 'Mr. Sheriff, what about it? We understand that there is a place down here licensed to sell liquor.' He says, 'Is that so? I will put him out of business.' "

It is conceded that a federal excise tax does not cease to be valid merely because it discourages or deters the activities taxed. Nor is the tax invalid because the revenue obtained is negligible. Appellee, however, argues that the sole purpose of the statute is to penalize only illegal gambling in the states through the guise of a tax measure. As with the above excise taxes which we have held to be valid, the instant tax has a regulatory effect. But regardless of its regulatory effect, the wagering tax produces revenue. As such it surpasses both the narcotics and firearms taxes which we have found valid.[4]

It is axiomatic that the power of Congress to tax is extensive and sometimes falls with crushing effect on businesses deemed unessential or inimical to the public welfare, or where, as in dealings with narcotics, the collection of the tax also is difficult. As is well known, the constitutional restraints on taxing are few. "Congress cannot tax exports, and it must impose direct taxes by the rule of apportionment, and indirect taxes by the rule of uniformity." *License Tax Cases, supra,* at 471.[5] The remedy for excessive taxation is in the hands of Congress, not the courts. *Veazie Bank* v. *Fenno,* 8 Wall. 533, 548. Speaking of the creation of the Bank of the United States, as an instrument for carrying out federal fiscal policies,

---

[4] One of the indicia which appellee offers to support his contention that the wagering tax is not a proper revenue measure is that the tax amount collected under it was $4,371,869, as compared with an expected amount of $400,000,000 a year. The figure of $4,371,869, however, is relatively large when it is compared with the $3,501 collected under the tax on adulterated and process or renovated butter and filled cheese, the $914,910 collected under the tax on narcotics, including marihuana and special taxes, and the $28,911 collected under the tax on firearms, transfer and occupational taxes. (Summary of Internal Revenue Collections, released by Bureau of Internal Revenue, October 3, 1952.)

[5] But see the argument for defendant in the *Child Labor Tax Case,* 259 U. S. 20, 30.

this Court said in *McCulloch* v. *Maryland,* 4 Wheat. 316, 423:

> "Should Congress, in the execution of its powers, adopt measures which are prohibited by the constitution; or should Congress, under the pretext of executing its powers, pass laws for the accomplishment of objects not entrusted to the government; it would become the painful duty of this tribunal, should a case requiring such a decision come before it, to say that such an act was not the law of the land. But where the law is not prohibited, and is really calculated to effect any of the objects entrusted to the government, to undertake here to inquire into the degree of its necessity, would be to pass the line which circumscribes the judicial department, and to tread on legislative ground. This court disclaims all pretensions to such a power."

The difficulty of saying when the power to lay uniform taxes is curtailed, because its use brings a result beyond the direct legislative power of Congress, has given rise to diverse decisions. In that area of abstract ideas, a final definition of the line between state and federal power has baffled judges and legislators.

While the Court has never questioned the above-quoted statement of Mr. Chief Justice Marshall in the *McCulloch* case, the application of the rule has brought varying holdings on constitutionality. Where federal legislation has rested on other congressional powers, such as the Necessary and Proper Clause or the Commerce Clause, this Court has generally sustained the statutes, despite their effect on matters ordinarily considered state concern. When federal power to regulate is found, its exercise is a matter for Congress.[6] Where Congress has employed the

---

[6] *McCulloch* v. *Maryland,* 4 Wheat. 316, 424, upheld the creation of a bank under the necessary and proper clause. *Veazie Bank* v. *Fenno,* 8 Wall. 533, 548, depends partly on the alternate ground of

taxing clause a greater variation in the decisions has resulted. The division in this Court has been more acute. Without any specific differentiation between the power to tax and other federal powers, the indirect results from the exercise of the power to tax have raised more doubts. This is strikingly illustrated by the shifting course of adjudication in taxation of the handling of narcotics.[7] The tax ground in the *Veazie Bank* case, *supra,* recognized that

the federal power to provide money for circulation. *In re Rapier,* 143 U. S. 110, the use of the mails by papers that advertised the Louisiana Lottery was barred. The *Lottery Case,* 188 U. S. 321, approved the same result through the commerce power. That power was enough to bar transportation of pictures of prize fights, *Weber* v. *Freed,* 239 U. S. 325; to seize contraband eggs after shipment had ended, *Hipolite Egg Co.* v. *United States,* 220 U. S. 45, 56; and to bar transportation of women for immoral purposes, *Caminetti* v. *United States,* 242 U. S. 470. While in *United States* v. *Butler,* 297 U. S. 1, 68, 73, a use of a tax for regulation was disapproved, an enactment that resulted in regulation under the Commerce Clause met judicial favor. *Mulford* v. *Smith,* 307 U. S. 38, 47; *Wickard* v. *Filburn,* 317 U. S. 111. *Hill* v. *Wallace,* 259 U. S. 44, 67, and *Trusler* v. *Crooks,* 269 U. S. 475, based on taxation, held taxes that regulated the grain markets were unconstitutional as an interference with state power. In *Chicago Board of Trade* v. *Olsen,* 262 U. S. 1, regulations based on the Commerce Clause were upheld. The departure from this line of decisions in *Hammer* v. *Dagenhart,* 247 U. S. 251, was reversed in *United States* v. *Darby,* 312 U. S. 100, 115–124, where we said:

"Whatever their motive and purpose, regulations of commerce which do not infringe some constitutional prohibition are within the plenary power conferred on Congress by the Commerce Clause." *Id.,* at 115. "The power of Congress over interstate commerce . . . extends to those activities intrastate which so affect interstate commerce or the exercise of the power of Congress over it as to make regulation of them appropriate means to the attainment of a legitimate end, the exercise of the granted power of Congress to regulate interstate commerce." *Id.,* at 118.

[7] *United States* v. *Jin Fuey Moy,* 241 U. S. 394, 402; *United States* v. *Doremus,* 249 U. S. 86; *Linder* v. *United States,* 268 U. S. 5; *Nigro* v. *United States,* 276 U. S. 332.

strictly state governmental activities, such as the right to pass laws, were beyond the federal taxing power.[8]   That case allowed a tax, however, that obliterated from circulation all state bank notes.   A reason was that "the judicial cannot prescribe to the legislative departments of the government limitations upon the exercise of its acknowledged powers."   *Id.*, at 548.   The tax cases cited above in the third preceding paragraph followed that theory.   It is hard to understand why the power to tax should raise more doubts because of indirect effects than other federal powers.[9]

Penalty provisions in tax statutes added for breach of a regulation concerning activities in themselves subject only to state regulation have caused this Court to declare the enactments invalid.[10]   Unless there are provisions extraneous to any tax need, courts are without authority to limit the exercise of the taxing power.[11]   All the provisions of this excise are adapted to the collection of a valid tax.

Nor do we find the registration requirements of the wagering tax offensive.   All that is required is the filing of names, addresses, and places of business.   This is quite general in tax returns.[12]   Such data are directly and inti-

---

[8] Cf. *New York* v. *United States,* 326 U. S. 572, 582, 587–588.

[9] Cf. *McCulloch* v. *Maryland,* 4 Wheat., at 422.

[10] *Child Labor Tax Case,* 259 U. S. 20, 34, 38; *Hill* v. *Wallace,* 259 U. S. 44, 63, 70; *United States* v. *Constantine,* 296 U. S. 287.

[11] But see *Linder* v. *United States,* 268 U. S. 5, 18; *Trusler* v. *Crooks,* 269 U. S. 475.

[12] 26 U. S. C. § 2011 *et seq.,* require registration by tobacco manufacturers, dealers and peddlers of the "name, or style, place of residence, trade, or business, and the place where such trade or business is to be carried on."   26 U. S. C. § 2810 requires the possessor of distilling apparatus to register "the particular place where such still or distilling apparatus is set up . . . the owner thereof, his place of residence . . . ."   See also 26 U. S. C. § 3270.

mately related to the collection of the tax and are "obviously supportable as in aid of a revenue purpose." *Sonzinsky* v. *United States,* 300 U. S. 506, at 513. The registration provisions make the tax simpler to collect.

Appellee's second assertion is that the wagering tax is unconstitutional because it is a denial of the privilege against self-incrimination as guaranteed by the Fifth Amendment.

Since appellee failed to register for the wagering tax, it is difficult to see how he can now claim the privilege even assuming that the disclosure of violations of law is called for. In *United States* v. *Sullivan,* 274 U. S. 259, defendant was convicted of refusing to file an income tax return. It was assumed that his income "was derived from business in violation of the National Prohibition Act." *Id.,* at 263. "As the defendant's income was taxed, the statute of course required a return. See *United States* v. *Sischo,* 262 U. S. 165. In the decision that this was contrary to the Constitution we are of opinion that the protection of the Fifth Amendment was pressed too far. If the form of return provided called for answers that the defendant was privileged from making he could have raised the objection in the return, but could not on that account refuse to make any return at all." 274 U. S., at 263.

Assuming that respondent can raise the self-incrimination issue, that privilege has relation only to past acts, not to future acts that may or may not be committed. 8 Wigmore (3d ed., 1940) § 2259*c*. If respondent wishes to take wagers subject to excise taxes under § 3285, *supra,* he must pay an occupational tax and register. Under the registration provisions of the wagering tax, appellee is not compelled to confess to acts already committed, he is merely informed by the statute that in order

to engage in the business of wagering in the future he must fulfill certain conditions.[13]

Finally, we consider respondent's contention that the order of dismissal was correct because a conviction under the sections in question would violate the Due Process Clause because the classification is arbitrary and the statutory definitions are vague.[14] The applicable definitions are 26 U. S. C. (Supp. V) § 3285 (b), (d) and (e).[15] The arbitrariness is said to arise from discrimination because some wagering activities are excluded. The Constitution does not require that a tax statute cover all phases

---

[13] Cf. *Davis* v. *United States*, 328 U. S. 582, 590; *Shapiro* v. *United States*, 335 U. S. 1, 35; see *E. Fougera & Co.* v. *City of New York*, 224 N. Y. 269, 281, 120 N. E. 642, 644.

[14] These defenses are open under the demurrer to facts alleged in the indictment and the judgment of dismissal although the opinion of the District Court relied only upon usurpation of state police power by the federal enactment. *United States* v. *Curtiss-Wright Corp.*, 299 U. S. 304, 330. Compare *United States* v. *Beacon Brass Co.*, 344 U. S. 43.

[15] 26 U. S. C. (Supp. V) § 3285:

"(b) Definitions.

"For the purposes of this chapter—

"(1) The term 'wager' means (A) any wager with respect to a sports event or a contest placed with a person engaged in the business of accepting such wagers, (B) any wager placed in a wagering pool with respect to a sports event or a contest, if such pool is conducted for profit, and (C) any wager placed in a lottery conducted for profit.

"(2) The term 'lottery' includes the numbers-game, policy, and similar types of wagering. The term does not include (A) any game of a type in which usually (i) the wagers are placed, (ii) the winners are determined, and (iii) the distribution of prizes or other property is made, in the presence of all persons placing wagers in such game, and (B) any drawing conducted by an organization exempt from tax under section 101, if no part of the net proceeds derived from such drawing inures to the benefit of any private shareholder or individual."

of a taxed or licensed business.[16]    Respondent predicates vagueness of the statute upon the use, in defining the subject of the tax, of the description "engaged in the business" of wagering and "usually" in § 3285 (b)(2).    We have no doubt the definitions make clear the activities covered and excluded.

*Reversed.*

MR. JUSTICE JACKSON, concurring.

I concur in the judgment and opinion of the Court, but with such doubt that if the minority agreed upon an opinion which did not impair legitimate use of the taxing power I probably would join it.    But we deal here with important and contrasting values in our scheme of government, and it is important that neither be allowed to destroy the other.

On the one hand, the Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."    This has been broadly construed to confer immunity not only "in any criminal case" but in any federal inquiry where the information might be useful later to convict of a federal crime.    Extension of the immunity doctrines to the federal power to inquire as to income derived from violation of state penal laws would create a large number of immunities from reporting which would vary from state to state. Moreover, the immunity can be claimed without being established, otherwise one would be required to prove guilt to avoid admitting it.    Sweeping and undiscriminating application of the immunity doctrines to taxation would almost give the taxpayer an option to refuse to report, as it now gives witnesses a virtual option to refuse to testify.    The Fifth Amendment should not be con-

---

[16] *Steward Machine Co.* v. *Davis,* 301 U. S. 548, 584.

strued to impair the taxing power conferred by the original Constitution, and especially by the Sixteenth Amendment, further than is absolutely required.

Of course, all taxation has a tendency, proportioned to its burdensomeness, to discourage the activity taxed. One cannot formulate a revenue-raising plan that would not have economic and social consequences. Congress may and should place the burden of taxes where it will least handicap desirable activities and bear most heavily on useless or harmful ones. If Congress may tax one citizen to the point of discouragement for making an honest living, it is hard to say that it may not do the same to another just because he makes a sinister living. If the law-abiding must tell all to the tax collector, it is difficult to excuse one because his business is law-breaking. Strangely enough, Fifth Amendment protection against self-incrimination has been refused to business as against inquisition by the regulatory power, *Shapiro* v. *United States,* 335 U. S. 1, in what seemed to me a flagrant violation of it. See dissenting opinion, *id.,* at 70.

But here is a purported tax law which requires no reports and lays no tax except on specified gamblers whose calling in most states is illegal. It requires this group to step forward and identify themselves, not because they, like others, have income, but because of its source. This is difficult to regard as a rational or good-faith revenue measure, despite the deference that is due Congress. On the contrary, it seems to be a plan to tax out of existence the professional gambler whom it has been found impossible to prosecute out of existence. Few pursuits are entitled to less consideration at our hands than professional gambling, but the plain unwelcome fact is that it continues to survive because a large and influential part of our population patronizes and protects it.

The United States has a system of taxation by confession. That a people so numerous, scattered and individualistic annually assesses itself with a tax liability, often in highly burdensome amounts, is a reassuring sign of the stability and vitality of our system of self-government. What surprised me in once trying to help administer these laws was not to discover examples of recalcitrance, fraud or self-serving mistakes in reporting, but to discover that such derelictions were so few. It will be a sad day for the revenues if the good will of the people toward their taxing system is frittered away in efforts to accomplish by taxation moral reforms that cannot be accomplished by direct legislation. But the evil that can come from this statute will probably soon make itself manifest to Congress. The evil of a judicial decision impairing thé legitimate taxing power by extreme constitutional interpretations might not be transient. Even though this statute approaches the fair limits of constitutionality, I join the decision of the Court.

MR. JUSTICE BLACK, with whom MR. JUSTICE DOUGLAS concurs, dissenting.

The Fifth Amendment declares that no person "shall be compelled in any criminal case to be a witness against himself." The Court nevertheless here sustains an Act which requires a man to register and confess that he is engaged in the business of gambling. I think this confession can provide a basis to convict him of a federal crime for having gambled before registration without paying a federal tax. 26 U. S. C. (Supp. V) §§ 3285, 3290, 3291, 3294. Whether or not the Act has this effect, I am sure that it creates a squeezing device contrived to put a man in federal prison if he refuses to confess himself into a state prison as a violator of state gambling

laws.* The coercion of confessions is a common but justly criticized practice of many countries that do not have or live up to a Bill of Rights. But we have a Bill of Rights that condemns coerced confessions, however refined or legalistic may be the technique of extortion. I would hold that this Act violates the Fifth Amendment. See my dissent in *Feldman* v. *United States,* 322 U. S. 487, 494–503.

Mr. Justice Frankfurter, dissenting.

The Court's opinion manifests a natural difficulty in reaching its conclusion. Constitutional issues are likely to arise whenever Congress draws on the taxing power not to raise revenue but to regulate conduct. This is so, of course, because of the distribution of legislative power as between the Congress and the State Legislatures in the regulation of conduct.

To review in detail the decisions of this Court, beginning with *Veazie Bank* v. *Fenno,* 8 Wall. 533, dealing with this ambivalent type of revenue enactment, would be to rehash the familiar. Two generalizations may, however, safely be drawn from this series of cases. Congress may make an oblique use of the taxing power in relation to activities with which Congress may deal directly, as for instance, commerce between the States. Thus, if the dissenting views of Mr. Justice Holmes in *Hammer* v. *Dagenhart,* 247 U. S. 251, 277, had been the decision of the Court, as they became in *United States* v. *Darby,* 312 U. S. 100, the effort to deal with the problem of child labor through an assertion of the taxing power

---

*In Pennsylvania, where this defendant is accused of having gambled, such conduct is a crime punishable by "separate or solitary" imprisonment. Purdon's Pa. Stat. Ann., 1945, Tit. 18, §§ 4601, 4602, 4603.

in the statute considered in *Child Labor Tax Case,* 259
U. S. 20, would by the latter case have been sustained.
However, when oblique use is made of the taxing power
as to matters which substantively are not within the
powers delegated to Congress, the Court cannot shut its
eyes to what is obviously, because designedly, an attempt
to control conduct which the Constitution left to the
responsibility of the States, merely because Congress
wrapped the legislation in the verbal cellophane of a
revenue measure.

Concededly the constitutional questions presented by
such legislation are difficult. On the one hand, courts
should scrupulously abstain from hobbling congressional
choice of policies, particularly when the vast reach of the
taxing power is concerned. On the other hand, to allow
what otherwise is excluded from congressional authority
to be brought within it by casting legislation in the form
of a revenue measure could, as so significantly expounded
in the *Child Labor Tax Case, supra,* offer an easy way
for the legislative ·imagination to control "any one of
the great number of subjects of public interest, jurisdic-
tion of which the States have never parted with . . . ."
*Child Labor Tax Case,* at 38. I say "significantly" be-
cause Mr. Justice Holmes and two of the Justices who
had joined his dissent in *Hammer* v. *Dagenhart,* Mc-
Kenna and Brandeis, JJ., agreed with the opinion in
the *Child Labor Tax Case.* Issues of such gravity affect-
ing the balance of powers within our federal system are
not susceptible of comprehensive statement by smooth
formulas such as that a tax is nonetheless a tax although
it discourages the activities taxed, or that a tax may be
imposed although it may effect ulterior ends. No such
phrase, however fine and well-worn, enables one to decide
the concrete case.

What is relevant to judgment here is that, even if the
history of this legislation as it went through Congress

did not give one the libretto to the song, the context of the circumstances which brought forth this enactment—sensationally exploited disclosures regarding gambling in big cities and small, the relation of this gambling to corrupt politics, the impatient public response to these disclosures, the feeling of ineptitude or paralysis on the part of local law-enforcing agencies—emphatically supports what was revealed on the floor of Congress, namely, that what was formally a means of raising revenue for the Federal Government was essentially an effort to check if not to stamp out professional gambling.

A nominal taxing measure must be found an inadmissible intrusion into a domain of legislation reserved for the States not merely when Congress requires that such a measure is to be enforced through a detailed scheme of administration beyond the obvious fiscal needs, as in the *Child Labor Tax Case, supra.* That is one ground for holding that Congress was constitutionally disrespectful of what is reserved to the States. Another basis for deeming such a formal revenue measure inadmissible is presented by this case. In addition to the fact that Congress was concerned with activity beyond the authority of the Federal Government, the enforcing provision of this enactment is designed for the systematic confession of crimes with a view to prosecution for such crimes under State law.

It is one thing to hold that the exception, which the Fifth Amendment makes to the duty of a witness to give his testimony when relevant to a proceeding in a federal court, does not include the potential danger to that witness of possible prosecution in a State court, *Brown* v. *Walker,* 161 U. S. 591, 606, and, conversely, that the Fifth Amendment does not enable States to give immunity from use in federal courts of testimony given in a State court. *Feldman* v. *United States,* 322 U. S. 487.

40

It is a wholly different thing to hold that Congress, which cannot constitutionally grapple directly with gambling in the States, may compel self-incriminating disclosures for the enforcement of State gambling laws, merely because it does so under the guise of a revenue measure obviously passed not for revenue purposes. The motive of congressional legislation is not for our scrutiny, provided only that the ulterior purpose is not expressed in ways which negative what the revenue words on their face express and which do not seek enforcement of the formal revenue purpose through means that offend those standards of decency in our civilization against which due process is a barrier.

I would affirm this judgment.

MR. JUSTICE DOUGLAS, while not joining in the entire opinion, agrees with the views expressed herein that this tax is an attempt by the Congress to control conduct which the Constitution has left to the responsibility of the States.