William Sousa **BRIDGEFORTH,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

**Robert W. ABERNATHY,** Appellant,

v.

**UNITED STATES of America,**
Appellee.

William Thomas **WOODSON,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

William Sousa **BRIDGEFORTH,** William
Thomas Woodson, and Robert W.
Abernathy, Appellants,

v.

**UNITED STATES of America,**
Appellee.

**No. 12715.**

United States Court of Appeals
Sixth Circuit.

May 15, 1956.

Judgment of conviction set aside, except to the conviction on the first count and cause remanded for further proceedings.

Ward Hudgins, Nashville, Tenn. (Harris Gilbert, Nashville, Tenn., on the brief), for appellants.

Fred Elledge, Jr., Nashville, Tenn., for appellee.

Before ALLEN, McALLISTER, and MILLER, Circuit Judges.

PER CURIAM.

■ Appellants were convicted of the offense of violating Title 26 U.S.C.A. § 3294(a), providing for failure to pay the tax required of persons engaged in receiving wagers. Neither intent to evade nor willfulness are required as proof of guilt of such offense. Appellants were sentenced to confinement and to payment of a fine for violation of the above named section of the statute. They concede they were legally convicted and sentenced under the count of the information charging violation of this section.

Appellants, however, were also indicted, tried, and convicted for violation of other provisions of the wagering statute which required proof that they willfully and knowingly attempted to evade and defeat such tax on wagers. Contending that there was no proof of willfulness on their part, they appeal from their convictions on such counts.

After the enactment of the relevant statutes requiring payment of a tax by

a person engaged in receiving wagers, providing for the registration of such a person, the posting or showing of a stamp denoting the payment of the tax, and providing penalties for violation thereof, appellants, who were operating as a partnership in the business of accepting wagers, filed their application with the Internal Revenue Service for the purpose of engaging in wagers. At the same time that they filed their application for registration, they attached a letter to the application, addressed to the Collector of Internal Revenue, stating that they had paid the necessary amount for the stamp for the period from November 1, 1951 to June 30, 1952; that the stamp was not issued to them; and that, instead, they received a receipt for the money paid for the stamp. They further, in the letter, advised the Collector that they instructed him to retain the stamp, as they desired to surrender it to the government, because of the fact that they would not, in the future, engage in any occupation whereby it would be necessary for them to have the stamp.

This curious maneuver, which would seem to baffle anyone except those initiated into the mysteries of the relationship between the Internal Revenue Service and gamblers, did not faze the Collector. No inquiry appears to have been made as to why such a letter was written and filed with the application for registration under the wagering law. According to the testimony of the custodian of the wagering applications in the Internal Revenue Service, appellants' application "would indicate that a stamp was issued on December 3, 1951."

Apparently the reason why appellants did not wish to have the stamp issued to them was because of fear of arrest by police officers on the charge of violation of local gambling laws, for it seems that such officers, on learning of the issuance of wagering stamps, arrest the parties registering under the Act, as gamblers.

In any event, appellants filed monthly reports on wagering required of them, on government forms provided therefor, for the months of January, February, March, and May, of 1952, and paid all excise taxes thereon. In addition, they mailed a check representing payment of the excise tax for April, 1952, without enclosing a proper return; but that check was applied by the government to another account owed by appellant Bridgeforth.

At this point, it may be mentioned that after the passage of the wagering statute, and on several occasions thereafter, appellants were advised by a reputable lawyer that, in his opinion, the law was unconstitutional; and in May, 1952, after a decision of a federal district court holding the Act unconstitutional in United States v. Kahriger, D.C. Pa., 105 F.Supp. 322, appellants were again advised by their attorney that he was of the same opinion. It appears that appellants were illiterate and ignorant men, and depended entirely upon their attorney for advice as to the probable invalidity of the wagering statute, and as to its application to their business, at that time and in the future.

After the above mentioned court decision, appellants still sought to continue to pay the monthly wagering excise taxes to the government; but the officials required them to be paid on departmental forms, and insisted that appellants have a wagering stamp; and appellants discontinued the monthly payments. They went on the assumption that they would thus avoid arrest for violation of local gambling laws; that if the law were finally held unconstitutional, they would not owe the monthly excise taxes; but that if it were held constitutional, they would pay the amount thereafter; and in their income tax returns for the period in question, appellants noted the deduction of 10% of their gross income for the federal wagering tax; and they withheld nearly all of this amount for subsequent payment. As of December, 1952, they owed

$19,272.85, and had on hand $17,665.20, but a considerable amount was later used up in making good on bad gambling losses.

A review of the evidence does not disclose any substantial proof of intent on the part of appellants to deceive the government in their income tax or other returns. Although they were uneducated and, apparently, unable to take care of their affairs, they employed a reputable and able accountant to keep their books and records and to prepare their tax returns, none of which was false or misleading in any respect.

The government attaches great importance to the letter stating appellants were paying for the stamp but did not wish to have it issued to them as they were not going to engage in any occupation which would require such a stamp. This did not deceive the Collector. Appellants actually continued thereafter for several months to pay the monthly wagering excise taxes. Obviously their letter was to protect themselves from local police.

██ Neither the letter, above mentioned, nor the failure to pay the excise tax in full, nor any implications or inferences drawn from other evidence constitute substantial evidence that appellants willfully and knowingly attempted to evade and defeat the excise tax on wagers imposed by the above mentioned statute. A statute, making it a felony willfully to evade or defeat a tax, is not violated by willful omissions to make a return and pay such tax. Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418.

In accordance with the foregoing, the judgments of conviction are set aside, except as to the convictions on the first count of the information filed against all of the appellants; and the cause is remanded to the district court for further proceedings in conformity with this opinion.