**Barbara Pate YARBOROUGH, Individually, and as Executrix of the Estate of Leon Yarborough Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civil Action No. H–95–3349.**

United States District Court,
S.D. Texas,
Houston Division.

Oct. 30, 1996.

Edward Matt Hennessy, DeGuerin & Dickson, Houston, TX, for Barbara Pate Yarborough.

Keith Orlando Edward Wyatt, Office of U.S. Attorney, Houston, TX, for the U.S.

### *MEMORANDUM AND ORDER*

ATLAS, District Judge.

Plaintiff Barbara Pate Yarborough ("Plaintiff") brought this action seeking to have a

federal tax judgment rendered against her and her late husband declared void and to quiet title to property on which the government has obtained a lien under the tax judgment. Pending before the Court are the parties' cross-motions for summary judgment. The Court has considered the Motions, the responses and replies, all other matters of record in this case, and the relevant authorities. For the reasons stated below, Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [Doc. # 21] is now DENIED, and Defendant's Motion for Summary Judgment ("Defendant's Motion") [Doc. # 22–23] is now GRANTED.

## I. FACTUAL BACKGROUND

In 1965, Plaintiff's husband, Leon Yarborough, was criminally charged with failing to pay federal excise taxes on and failing to register his wagering business. See Plaintiff's Motion, Exhibit B (Criminal Information, United States of America v. Leon Yarborough, Crim. No. 4350, W.D.Tex.1965).[1] Pursuant to a plea agreement, the charges for his failure to pay the excise taxes were dismissed, see id., Exhibit D (Order for Dismissal). However, he pled guilty to two counts of failing to register his business, see id., Exhibit C (Guilty Plea), and was sentenced to two concurrent one-year terms of incarceration, probated for three years, and fined $500, see id.

In 1975, the government brought a civil suit against the Yarboroughs to foreclose federal tax liens and reduce to judgment excise tax assessments on Leon Yarborough's wagering business. See id., Exhibit E (Complaint to Foreclose Federal Tax Liens, United States of America v. Leon A. Yarborough, et al, Civ. No. 1–75–2, N.D.Tex.1975). As a result of that action, the government obtained a judgment against the Yarboroughs for $490,342.11. See id., Exhibit F (Amended Stipulated Judgment).[2] This judgment, entered in 1978 in Abilene, was certified for registration in another district and then abstracted and filed in 1980 in Houston. See id., Exhibit G. By 1990, payments of only $78,350.82 had been credited against the judgment. See id., Exhibit A (Abstract of Judgment). In 1990, the government refiled the abstracted judgment in Houston. See id., Exhibit H.

Upon the death of Leon Yarborough, Plaintiff Barbara Yarborough inherited the property subject to the government's abstracted judgment. See Plaintiff's Motion, at 3–4. On June 22, 1995, she initiated this action to declare the judgment void and to quiet title to her property. In her Motion, Plaintiff argues that the judgment cannot be enforced because it violated her husband's constitutional right against double jeopardy.[3] In support of this argument, she contends that his criminal conviction and the civil tax judgment served to penalize him for the same conduct. In response, the government argues that the civil enforcement of the excise tax assessment was not a penalty for purposes of the Fifth Amendment's double jeopardy clause.[4]

1. Yarborough's charges were brought under 26 U.S.C. § 7203, for failing to comply with § 4412 (registration requirement) and § 4401 (excise tax).

2. The government originally sought a judgment for $771,432.89, which would have included both the principal and the interest the government claimed Leon Yarborough owed in taxes. However, the parties settled on a judgment which represented only the principal owed. See Plaintiff's Motion, at 3.

3. In her original complaint, Plaintiff argued that the abstract of judgment was void because the government's 1990 refiling of the abstract was untimely. See Plaintiff's Original Complaint [Doc. # 1]. However, on February 5, 1996, the Court rejected this argument by granting the government's Motion for an Order Reviving and Renewing Judgment [Doc. # 12]. Subsequently,

Plaintiff filed an amended complaint raising for the first time her double jeopardy argument. See Plaintiff's First Amended Complaint [Doc. # 17].

4. The government also contends that this action is essentially an attempt by Plaintiff to reopen a civil judgment and should therefore be barred as untimely under Fed.R.Civ.P. 60. See Defendant's Supplement to its Motion for Summary Judgment and Supplemental Response to the Plaintiff's Motion for Summary Judgment [Doc. # 25], at 1–2. Rule 60(b)(4) provides that motions seeking relief from a void judgment must be made within a "reasonable time." Defendant argues that Plaintiff's complaint is untimely because it was filed sixteen years after entry of the Amended Stipulated Judgment. In response, Plaintiff argues that because the judgment was dormant until the Court revived it this past February, her failure to take earlier action is entirely

## II. *DISCUSSION*

Both parties have moved for judgment as a matter of law in this action. Because neither party has claimed, and the Court does not find, that this case raises any issue of material fact requiring decision by a jury, the Court will dispose of this case through summary judgment. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

### A. *Standing*

█ As a preliminary matter, although neither party has argued this issue, the Court finds it necessary to examine whether Plaintiff has standing to assert her late husband's right against double jeopardy. Clearly, Plaintiff has standing to challenge the tax judgment because it was rendered against both her and her husband. The issue here, however, is whether she has standing to base her attack on her husband's, and not her own, constitutional right.

Plaintiff skirts this issue by declaring that "[a]n unconstitutional governmental act, whether committed by the executive, legislative, or judicial branch, is a legal nullity. It is, therefore, axiomatic that an unconstitutional judgment can have no legal effect." *See* Plaintiff's Motion, at 4. The Court rejects this blanket response. A litigant must demonstrate that she has the right to challenge an alleged unconstitutional governmental act. To invoke the jurisdiction of a federal court, a party generally " 'must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties.' " *See Hang On, Inc. v. City of Arlington,* 65 F.3d 1248, 1251 (5th Cir.1995) (citing *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)).

However, this general rule is not absolute, but prudential. *See id.* Courts have chosen not to follow it in a number of instances in which the person whose rights may have

been violated is not able to assert those rights for himself, the person asserting those rights has suffered some cognizable injury as a result of the alleged violation, and there is a close relationship between these two persons. *See id.,* at 1251–52. In a situation analogous to the one at bar, the Fifth Circuit has allowed, in suits brought under 42 U.S.C. § 1983, surviving family members to challenge, both on their own behalf and on behalf of their deceased family members, alleged violations of their family members' constitutional rights. *See, e.g., Flores v. Cameron County, Tex.,* 92 F.3d 258, 271 (5th Cir.1996). In the case at bar, Leon Yarborough is likewise unable to challenge the tax judgment himself. In addition, Plaintiff is also alleging her own injury as a result of the alleged constitutional violation. She now owns and is the executrix for her late husband's estate that owns the property subject to the liens in issue. For these reasons, the Court will consider Plaintiff's argument on the merits.

### B. *Double Jeopardy*

█ The double jeopardy clause of the Fifth Amendment prohibits a second prosecution for the same offense after acquittal or conviction and prohibits multiple punishments for the same offense. *See Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 769 n. 1, 114 S.Ct. 1937, 1941 n. 1, 128 L.Ed.2d 767 (1994). In this action, Plaintiff argues that Leon Yarborough suffered two punishments for the same offense, since the criminal information brought against him (Exhibit B to Plaintiff's Motion) and the civil complaint to foreclose federal tax liens (Exhibit E to Plaintiff's Motion) both address his illegal gambling activities during the same period of time, 1959 through 1964. However, the Court notes that Yarborough's criminal charges for tax evasion were dismissed, and his conviction rested instead on his plea of guilty for failing to register his wagering business. Therefore, even if the civil tax judgment could be considered a "punishment" for the purposes of the double jeopar-

reasonable. *See* Reply to Defendant's Supplement to its Motion for Summary Judgment and Supplemental Response to the Plaintiff's Motion for Summary Judgment [Doc. # 26], at 2. In

light of the government's delay in moving to revive the judgment until Plaintiff herself initiated this action, the Court declines to dismiss the case on the ground that Plaintiff waited too long.

dy clause, the Court notes that Leon Yarborough was not "punished" in the civil and criminal cases for the same conduct. The criminal case addressed his failure to register his business, while the civil case addressed his failure to pay certain taxes.

The Fifth Circuit law is not entirely clear regarding whether the double jeopardy clause prohibits future prosecution or punishment when a charge is dismissed pursuant to a plea bargain. However, in *U.S. v. Kim*, 884 F.2d 189 (5th Cir.1989), the court stated that in the plea bargaining context, "jeopardy attaches with the acceptance of a guilty plea," and in *Fransaw v. Lynaugh*, 810 F.2d 518, 525 (5th Cir.1987), the court noted that a number of cases from other circuits have held that the double jeopardy clause does not prohibit reindictment of charges dismissed pursuant to a plea bargain. While it is not free from doubt, the Court concludes that in the case at bar, jeopardy did not attach to the dismissed charges.

■ In any event, even if the Court were to conduct a double jeopardy analysis, by considering, as Plaintiff urges, that the criminal and civil cases addressed the same general activity although not the exact same conduct (Leon Yarborough's wagering business) or that jeopardy attached upon Yarborough's acceptance of the plea bargain despite the fact that the tax evasion charges were dismissed, the Court would still uphold the civil judgment.

Plaintiff speculates that the ten percent excise tax on wagering was a penalty because Congress later reduced the tax.[5] Plaintiff argues that Congress, in lowering the tax, must have believed that the tax was too high, unduly burdensome, and therefore punitive. *See* Plaintiff's Motion, at 6–7. In a Supplemental Brief requested by the Court following oral argument, Defendant has provided

authority establishing that, on the contrary, Congress reduced the wagering tax in 1974 largely because, after more than two decades in operation, the tax had simply failed to raise the revenue expected of it. *See* Defendant's Supplemental Brief in Support of its Motion for Summary Judgment ("Supplemental Brief") [Doc. # 28], at 3–4 (citing Balkey and Kurland, *Development of the Federal Law of Gambling*, 63 Cornell L.Rev. 923, 998 (1978)). In addition, Defendant has cited legislative history strongly indicating that the tax was originally enacted for the purpose of raising additional revenue for the government at a time of extreme budgetary pressures. *See id.*, at 2–3 (citing H.R.Rep. No. 586, 82nd Cong., 1st Sess. 54, 55, 112, *cited in United States v. D.I. Operating Co.*, 362 F.2d 305, 308 (9th Cir.1966), *cert. denied*, 385 U.S. 1024, 87 S.Ct. 742, 17 L.Ed.2d 673 (1967)). Plaintiff, on the other hand, has directed the Court's attention to no legislative history or authorities in support of her arguments. *See* Plaintiff's Supplemental Memorandum Per Court's Order of October 7, 1996 [Doc. # 29].

In *United States v. Kahriger*, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1952), *overruled on other grounds by Marchetti v. U.S.*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), the Supreme Court specifically rejected the argument that the main purpose of the wagering tax at issue in this case was to penalize illegal gambling. Instead, the Court found that the tax was a revenue-producing measure which had a regulatory effect. *Id.* at 27, 73 S.Ct. at 512. More recently, in *Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, the Supreme Court described four factors that could guide courts in determining whether a tax may be characterized as "punishment" for purposes of double jeopardy analysis.[6] These factors include whether the tax:

---

5. In 1974, the wagering tax was lowered to two percent. *See* Pub.L. No. 93–499, 88 Stat. 1550, Exhibit K to Plaintiff's Motion. In 1982, the tax for lawful wagers was further lowered to one quarter of one percent, while the tax for unlawful wagers remained at two percent. *See* Pub.L. No. 97–362, 96 Stat. 1731, Exhibit L to Plaintiff's Motion. The tax has remained the same since 1982. *See* 26 U.S.C. § 4401 (West Supp.1996).

6. Using these factors, the Court decided in *Kurth Ranch*, for the first time, that a tax was in fact a punishment and therefore could not be assessed against a party who had already been criminally convicted for the activity subject to the tax. The tax at issue in *Kurth Ranch* was the Montana Dangerous Drug Tax Act, which imposed a tax on the possession and storage of illegal drugs. The tax was either ten percent of the assessed market value of the drugs or a specified amount

(1) is assessed at a disproportionately high rate;

(2) has an obvious deterrent purpose;

(3) is conditioned on the commission of a crime; and

(4) is levied on goods that the taxpayer neither owns nor possesses when the tax is imposed.

*Kurth Ranch,* 511 U.S. at 779–84, 114 S.Ct. at 1946–48. None of these factors convince the Court that the wagering tax assessed against the Yarboroughs was a "punishment."

With respect to the first factor, the Court finds that a ten percent tax on wagering is not sufficiently high to indicate a penalty.[7] In contrast, the tax which the Court in *Kurth Ranch* struck down as a second punishment was assessed at a rate of 400 percent of the market value of the illegal drugs. *Id.* at 780 n. 17, 114 S.Ct. at 1946 n. 17. Regarding the second factor, the legislative history of the wagering tax, as noted above, indicates that the tax was enacted for the primary purpose of enhancing revenue. With respect to the third factor, unlike the Montana drug tax, the wagering tax was not conditioned on the commission of a crime. As discussed earlier, the tax was assessed against Leon Yarborough despite the fact that the charges against him for failure to pay the tax were dismissed. In addition, not all wagering affected by the tax was illegal during the time of the activities for which Yarborough was convicted. *See Kahriger,* 345 U.S. at 25, 73 S.Ct. at 511. Although Plaintiff refers to Leon Yarborough's "illegal gambling activities," he was in fact convicted merely for his failure to register his wagering business as required by statute. Finally, regarding the fourth factor, it is not clear in the case at bar whether the Yarboroughs were in possession of the full bounty of Leon Yarborough's wagering business at the time the tax was imposed on them. However, the Court's concern in *Kurth Ranch* with respect to this factor seems to be that the state both confiscated the illegal drugs and then imposed a tax on them as well. In the case at bar, this factor raises no similar concern because there is no indication that the government confiscated any proceeds from Leon Yarborough's wagering business.

Thus, under both *Kahriger* as well as the more recent authority of *Kurth Ranch,* the Court holds that, even if Plaintiff's claim merits a constitutional analysis, the tax assessed against Leon Yarborough was not a penalty for the purposes of the double jeopardy clause. Therefore, the civil tax judgment rendered against him did not violate his constitutional rights, and Plaintiff has stated no legal basis on which this Court can declare the judgment void.

## III. CONCLUSION

For the foregoing reasons, it is **ORDERED** that **Plaintiff's Motion for Summary Judgment** ("Plaintiff's Motion") [Doc. # 21] is **DENIED,** and **Defendant's Motion for Summary Judgment** ("Defendant's Motion") [Doc. # 22–23] is **GRANTED.**

---

depending on the drug, whichever was greater. *Kurth Ranch,* 511 U.S. at 769–70, 114 S.Ct. at 1941.

7. In its Supplemental Brief, Defendant has brought to the Court's attention other ten percent taxes which are clearly revenue enhancing or regulatory and not punitive. They include a luxury tax on passenger vehicles priced over $30,-000.00 (26 U.S.C. § 4001) and a tax on domestic travel fare (26 U.S.C. §§ 4261 and 4262). *See* Defendant's Supplemental Brief, at 4–5.