Carl L. WOODARD, Plaintiff,

v.

Gary CAMPBELL, Director of Internal Revenue, Defendant,

United States of America, Intervenor-Defendant.

CELTIC AMERICAN LEGION POST NO. 372, Inc., Plaintiff,

v.

Gary CAMPBELL, Director of Internal Revenue, Defendant.

Civ. Nos. 3730, 3771.

United States District Court S. D. Indiana, Indianapolis Division.

Aug. 8, 1955.

Lewis & Goett, by David M. Lewis, Indianapolis, Ind., for plaintiff Carl L. Woodard.

Korbly, Korbly & Quill, by Joseph F. Quill, Indianapolis, Ind., for plaintiff Celtic American Legion Post No. 372.

Jack C. Brown, U. S. Atty., and Don Tabbert, Asst. U. S. Atty., Indianapolis, Ind., for defendant Gary Campbell.

STECKLER, Chief Judge.

The above entitled causes after having been consolidated for trial came on regularly to be heard, and the Court having considered the evidence, the oral argu-

ments of the parties and the post trial briefs and being fully advised in the premises now finds the following:

Findings of Fact

1. The Court has jurisdiction over the parties and the subject matter in these causes of action.

2. The plaintiff in Cause No. 3730, Carl L. Woodard, sues to recover $100 paid to the defendant on September 10, 1953 (Tr. 212) in partial satisfaction of excise tax in the total sum of $72,387.95 which the Commissioner of Internal Revenue assessed on August 29, 1952, against Carl L. Woodard and/or Celtic American Legion Post No. 372, Inc., plaintiff in Cause No. 3771, as joint venturers, for the period December 1, 1951 through July 31, 1952.

3. The assessment of $72,387.95 included excise tax on lotteries assessed under Section 3285(a), Internal Revenue Code of 1939, 26 U.S.C.A., penalties for failure to file a return and pay the tax when due, and interest in the respective amounts of $57,267.25, $14,316.81 and $803.89 (Tr. 249; Pltf. Ex. A–1).

4. The amount of $100 paid by the plaintiff, Carl L. Woodard, was less than the amount of the tax due for any one of the months covered by the assessment in the sum of $72,387.95.

5. The plaintiff in Cause No. 3730 having only paid $100 of the assessment in the amount of $72,387.95, the United States of America, at the request of the Commissioner and under the authority of the Attorney General of the United States, intervened and counterclaimed for the unpaid amount of $72,287.95, together with interest thereon as provided by law. (Tr. 245–248; U. S. Exs. 1 and 2.)

6. The plaintiff in Cause No. 3771, Celtic American Legion Post No. 372, Inc., sues to recover the amount of $7,-158.83 paid on October 31, 1952, to the defendant, Gary Campbell, as excise tax on wagers for the month of September, 1952 which amount was assessed by the Commissioner against Carl L. Woodard, the plaintiff in Cause No. 3730 and/or Celtic American Legion Post No. 372, Inc. as joint venturers (Tr. 124–125; Pltf. Ex. C–1).

7. On September 10, 1953, the plaintiff in Cause No. 3730 filed a timely claim for refund alleging that the sum of $100 was erroneously assessed and collected from Carl L. Woodard as wagering tax for the period December 1, 1951 through July 31, 1952. On November 3, 1953, the defendant notified Carl L. Woodard by registered mail of the rejection and disallowance of said claim for refund (Tr. 213; Pltf. Exs. M and O) and this suit was instituted within the time allowed by law.

8. On October 1, 1952, the plaintiff in Cause No. 3771, Celtic American Legion Post No. 372, Inc., filed a claim for refund (Pltf. Ex. C–2) alleging that wagering tax in the amount of $7,158.83 had been erroneously assessed and collected from it for the month of September, 1952. On April 27, 1953 the defendant notified Celtic American Legion Post No. 372, Inc. by registered mail of the rejection and disallowance of said claim for refund, and this suit was instituted timely within the time allowed by law (Pltf. Ex. C–2).

9. For many years prior to November 29, 1951, Carl L. Woodard had owned and operated the C & M Sales Company, a weekly baseball lottery in Indianapolis, Indiana (Tr. 301, 302, 304). After Section 3285 of the Code of 1939 imposed a 10 per cent excise tax on lotteries as of November 1, 1951, Woodard continued to operate as owner until November 29, 1951 in an unsuccessful attempt to absorb the tax and show a profit (Tr. 305–310).

10. Woodard was aware that Section 3285(b) (2) (B) of the Code exempted from the tax certain drawings conducted by organizations entitled to tax exemption (Tr. 313). Faced with the alternative of being put out of business (Tr. 309–310) or finding a sponsor (Tr. 319), Woodard approached certain friendly officers of the Celtic American

Legion Post No. 372, Inc., and asked to be sponsored (Tr. 414, 383–389). In the pre-contract negotiations it was agreed by and between Woodard and Post No. 372 that Woodard would furnish the operating capital in the amount of $5,000 (Tr. 415).

11. On November 29, 1951 Woodard and Celtic American Legion Post No. 372, Inc. by its member and agent, one Francis M. Reidy, entered into a written instrument whereby Woodard purported to sell the C & M Sales Club to Post No. 372 for a recited consideration of $1 and Post No. 372 purported to employ Woodard as general manager of the lottery at a weekly salary of $200 (Tr. 101–103). By the terms of the contract, Woodard was given complete control and jurisdiction over the employees and operations of the lottery, which was to continue indefinitely (Tr. 102).

12. Prior to signing the contract dated November 29, 1951, Woodard contributed operating capital in the amount of $5,000 which was deposited in the special account of Post No. 372 and to Woodard was given the sole authority to draw checks thereon (Tr. 276, 415; U. S. Ex. 5). This contribution was returned to Woodard by Post No. 372 after Revenue Agent Lowell Myers, in April, 1952 made inquiries into the lottery operations and indicated the wagering tax would be assessed against the parties (Tr. 327, 329, 373–377, 415). The repayment of $5,000 to Woodard by Post No. 372 was motivated by the previous contact made by Myers (Tr. 415).

13. The parties tacitly agreed that Woodard was to be fully responsible for any operating losses which Post No. 372 might be unable to pay under its conditional liability. Post No. 372 was under no absolute, legal obligation to pay any losses sustained by the lottery (Tr. 207, 416).

14. Woodard received no part of the stipulated $200 per week until the lottery showed sufficient net profit in March, 1952. During the ten-month period of operations, Woodard received payment to the extent of $7,800 and Post No. 372 derived net profits amounting to approximately $25,200 (Tr. 168, 176–180, 326, 354).

15. Post No. 372 exercised no control over Woodard in the conduct of the lottery enterprise except for an infrequent accounting which Woodard was obliged to make to the Post (Tr. 414). Woodard had the absolute final authority in respect to the detailed operations of the lottery (Tr. 415–416).

16. Woodard performed services for Post No. 372 more in the nature of that of an independent contractor than as an employee. The relationship existing between Woodard and Post No. 372 was that of joint venturers conducting a lottery for the mutual profit and benefit of both (Tr. 421).

17. The joint venture operated from December 1, 1951 to about September 30, 1952, when Post No. 372 and Woodard terminated the relationship by mutual consent out of respect for the wishes of the District office of the American Legion which expressed its displeasure at the adverse publicity surrounding the lottery and the assessment of the tax on August 29, 1952 (Tr. 87–88, 130).

18. During the ten-month period of the illegal lottery operations, Post No. 372 received gross income from its dues-paying members and concession bar in total amount of approximately $20,600 which was less than 3⁄10 of one per centum of gross receipts from the lottery operations in the amount of $723,694.40 (Tr. 161–162; Pltf. Exs. A–1, A–2, B–1, B–2, C–1, C–2).

19. The lottery was a business substantially unrelated to the exercise or performance by Post No. 372 of the functions and purposes for which it was granted tax exemption.

20. The plaintiff Carl L. Woodard in Cause No. 3730 at all times was under the impression that he was an employee of Celtic American Legion Post No. 372, Inc., and was not liable for excise tax on wagering. The members of Celtic American Legion Post No. 372, Inc., at all times were under the impression that the law gave said organization an exemption

from the excise tax on wagering under the circumstances under which the pool was being operated.

21. The Court finds that each of the plaintiffs in these causes would not have entered into the agreement nor undertaken the activities of the pool if they had believed and had known that the excise tax on wagering would have been applied to them.

22. Each of the plaintiffs has continued to contend with the Department of Internal Revenue that plaintiff Carl L. Woodard was an employee only of Celtic American Legion Post No. 372, Inc., and that they were not in the relationship of joint venturers or partners.

23. Throughout the course of their joint venture Celtic American Legion Post No. 372, Inc., in some respects treated plaintiff Carl L. Woodard as an employee. During the course of their relationship said Legion Post No. 372 caused W–2 Forms to be filed with the Department of Internal Revenue for the plaintiff Woodard as an employee.

24. The Court finds that at all times a real question existed in the minds of the plaintiff Carl L. Woodard and the plaintiff Celtic American Legion Post No. 372, Inc., as to their liability for the tax, and promptly after a dispute arose between plaintiff Woodard and the defendant concerning the liability for the tax, plaintiff, Woodard, made a payment on said tax and demanded a refund, and when refused, suit was filed for said refund in order that the questions of fact and law could be decided by the Court.

25. The failure of the plaintiffs to file timely returns of wagering excise taxes for the months beginning December, 1951 and ending in September, 1952, was therefore due to reasonable cause and was not due to willful neglect.

### Conclusions of Law

From the foregoing facts the Court concludes:

1. This Court has jurisdiction over the parties and subject matter in these causes of action.

2. In Cause No. 3730, the law is with the defendant, Gary Campbell, Director of Internal Revenue, and against the plaintiff, Carl L. Woodard, on plaintiff's complaint, and the law is with the Intervenor, United States of America, and against the plaintiff, Carl L. Woodard, on the Intervenor's counterclaim, except in respect to the penalty assessed for the period December 1, 1951 through July 31, 1952. The law is with the plaintiff, Carl L. Woodard, with respect to the assessment of the penalty for such period.

3. In Cause No. 3771, the law is with the defendant, Gary Campbell, Director of Internal Revenue, on plaintiff's complaint, and against the plaintiff, Celtic American Legion Post No. 372, Inc.

4. Plaintiffs Carl L. Woodard and Celtic American Legion Post No. 372, Inc. operated the lottery as joint venturers for mutual profit and benefit.

5. Section 3285(a), Internal Revenue Code of 1939, effective November 1, 1951, imposed on "lotteries" an excise tax of 10 per cent, and subsection (b) (2) (B) thereof provides that the term "lottery" does not include any drawing conducted by an organization exempt from taxation under Section 101 of the Code, provided no part of the net proceeds inures to the benefit of any private shareholder or individual.

6. The term "drawing," as used in Section 3285(b) (2) (B), *supra*, does not exempt from the excise tax a Section 101 organization which engages in a lottery for profit of such scope and indefinite duration as the one here involved.

7. Where, as here, the drawing is of such scope and magnitude as to constitute a business substantially unrelated to the purposes for which Congress granted tax exemption under Section 101 of the Code, the organization thereby exceeds its income tax-exempt status as to the unrelated business income and is subject to the excise tax imposed by Section 3285(a) *supra*.

8. The failure of the plaintiffs Carl L. Woodard and Celtic American Legion Post No. 372, Inc. to file returns for the months of December, 1951 through July, 1952, was with probable

cause and was not due to willful neglect. The Commissioner however, duly and lawfully assessed the tax and interest for the period December 1, 1951 through July 31, 1952, and the tax for the month of September, 1952. The defendant properly and lawfully collected the payment of $100 from the plaintiff, Carl L. Woodard, in Cause No. 3730, and the tax of $7,158.83 from the Celtic American Legion Post No. 372, Inc., for the month of September, 1952 in Cause No. 3771.

9. Each of the plaintiffs in these causes of action is jointly and severally liable as joint venturers for the tax and interest as assessed by the Commissioner.

10. The United States of America is entitled to recover on its counterclaim in Cause No. 3730 against the plaintiff, Carl L. Woodard, in the amount of $58,071.14, together with interest thereon according to law, said amount representing the tax and interest without the penalty as assessed by the Commissioner for the period December 1, 1951 through July 31, 1952.

11. The costs of each of these causes of action are to be taxed against the respective plaintiffs in said actions.

Let judgments be rendered accordingly.