**Carl L. WOODARD, Plaintiff-Appellant,**

v.

**Gary CAMPBELL, Director of Internal Revenue, Defendant-Appellee.**

**United States of America, Intervenor-Appellee.**

**No. 11680.**

United States Court of Appeals
Seventh Circuit.

June 29, 1956.

Herbert L. Myers, Indianapolis, Ind., C. Richard Fulmer, Indianapolis, Ind., Fulmer & Myers, Indianapolis, Ind., of counsel, for plaintiff-appellant.

Charles K. Rice, Asst. Atty. Gen., S. Dee Hanson, Atty., U. S. Dept. of Justice, Washington, D. C., Jack C. Brown, U. S. Atty., Indianapolis, Ind., Lee A. Jackson, Hilbert P. Zarky, Dept. of Justice, Washington, D. C., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

FINNEGAN, Circuit Judge.

Behind this appeal lies plaintiff Woodard's action for refund of $100 wagering excise tax, 65 Stat. 452, 26 U.S.C. § 3285, Supp. V, allegedly erroneously assessed against him for the period December 1, 1951 to July 31, 1952. This refund claim represents only a partial payment of $72,387.95 assessed August 29, 1952, against Woodard "and/or Celtic American Legion Post No. 372, Inc., as joint venturers." That assessment included excise tax on lotteries under § 3285(a), Internal Revenue Code of 1939, 26 U.S.C. § 3285(a), Supp. V, penalties for failure to file a return and pay tax when due and interest in the amounts of $57,267.25, $14,316.81, $803.89.

Because Woodard, who was the plaintiff in Cause No. 3730 filed below, had paid only $100 against the total assessment, the United States intervened and counterclaimed for the balance due and owing, $72,287.95.

Celtic American Legion Post No. 372, Inc., instituted an action, Cause No. 3771 below, for recovery of $7,158.83 paid to the Director of Internal Revenue as excise tax on wagers for the month of September, 1952. This amount was also assessed against Woodard "and/or" Celtic as joint venturers.

Only Woodard has appealed from the adverse judgment resting upon findings and conclusions reported as Woodard v. Campbell, D.C.Ind.1955, 134 F.Supp. 258. We will refer to Woodard as the taxpayer in this appeal who invoked our jurisdiction under 28 U.S.C. § 1291, and leave the findings of fact and conclusions of law undisturbed. Chicago Title & Trust Co. v. United States, 7 Cir., 1954, 209 F.2d 773. Taxpayer, according to the district judge's view of the evidence and law, is personally liable for the wagering taxes assessed against him and Celtic as joint venturers.

Seeking to dilute the impact of evidence appearing in the record, Woodard contends the absence of an agreement between himself and Celtic for profit and loss sharing, bars existence of a joint venture on a weekly baseball lottery purportedly sold by taxpayer to Celtic, under a written contract dated November 29, 1951.

Taxpayer's earnest desire to be classified as Celtic's employee or agent, or both, and his reasons for vigorously contesting evidence casting him in the role of a joint venturer all clears up, once the facts are unraveled. Shortly before the effective date, November 1, 1951, of the occupational tax provisions of the Internal Revenue Act of 1951, Woodard became acutely sensitive to that wagering tax. Indeed he believed, after legal advice, that if he continued operating his weekly baseball lottery as a sole proprietor, he would be unable to absorb the ten percent tax on his gross receipts from that operation.[1] Though understating it a bit, we can say Woodard was aware,[2] that § 3285(b) (2) (B), I.R.C. 1939 excluded certain drawings conducted by organizations entitled to tax exemption.

Confronted with an Act of Congress, Woodard approached some congenial offi-

---

[1] Woodard's direct testimony demonstrated his awareness:

"Q. You believed that you would be taxable if you stayed in business by yourself?

"A. After advice, yes." (R. 309)
* * *
"Q. Were you told that possibly if you operated by yourself you would be subject to the tax?

"A. That is the thought they gave me, Sir." (R. 312)

Another instance also appears when Woodard was testifying pursuant to Rule 43(b), Federal Rules Civil Procedure, 28 U.S.C.:

"Q. Now, isn't it true that you were looking for someone to sponsor your activity, someone with a 101 exemption like this Club? * * *

"A. It possibly amounts to that." (R. 317-8)

[2] "Q. And you knew perhaps the Legion had a 101 exemption?

"A. I knew that.

"Q. And might not be subject to the tax?

"A. That's correct." (R. 315)

cers of Celtic and as a result this taxpayer sold his baseball pool to Celtic for $1.00. Thus, Woodard transferred to Celtic two desks, a safe, a ping-pong table, two bins, some chairs and a brief case "or so" (R. 319). By the terms of this contract of sale, Celtic, as part of the consideration, employed Woodard "as general manager to operate said business formerly known as C & M Sales Company on the following terms and conditions:

"a. Mr. Woodard shall be paid a salary of Two Hundred Dollars ($200.00) per week.

"b. Mr. Woodard shall have exclusive authority to employ all necessary personnel in the operation of said business and to fix salaries for such personnel.

"c. The complete operation of the business formerly known as C & M Sales Company during the term of this contract shall be under the exclusive jurisdiction of Mr. Woodard.

"d. Mr. Woodard shall employ necessary personnel to keep an accurate set of books and accounts of the business, which said books and accounts shall at all times be opened to the authorized officers of the Club."

■■ Prior to signing that contract, taxpayer contributed $5000 operating capital which was deposited in Celtic's bank account; Woodard was given sole authority to draw checks against it. That $5000 was returned to taxpayer in two installments. After the contract was signed this baseball lottery continued operating at the old stand, used by Woodard, only Celtic paid rent for the premises. Any further reporting of relevant facts would yield little favorable to taxpayer. We think the district judge was justified in drawing an inference that Woodard and Celtic were joint venturers. Rupple v. Kuhl, 7 Cir., 1949, 177 F.2d 823. Clauses b and c, set out above, in their contract are highly significant. That there was a combination of Woodard and Celtic, without the formation of an actual partnership or corporate designation, and a pooling of interests is abundantly clear. Certainly the evidence dissipates any appearance of employer-employee relationship. Singer Manufacturing Co. v. Rahn, 1889, 132 U.S. 518, 523, 10 S.Ct. 175, 33 L.Ed. 440. Actually the facts established by this record bring Woodard squarely within the goal set by Congress, and quoted by taxpayer's counsel from the House Ways and Means Committee Report, of collecting wagering taxes from the bookmaker or "person who conducts the pool or lottery as the principal." See, e. g., United States v. Kahriger, 1953, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754. There is no inescapable reason for insisting that absence of a loss sharing arrangement should be the conclusive test here. Because the written words in the contract of sale omit express articulation of the coalition which the evidence indicates resulted between taxpayer and Celtic, is not a sound basis for overturning the lower court's judgment under review. Though the parties may have refrained from verbalizing their intentions, a reading of this record leaves us with the dominant and distinct impression that more than fortuitous circumstance operated so that to their joint undertaking Celtic hopefully contributed its assumed exemption shield, under 26 U.S.C. § 101 (1952 ed.), and Woodard contributed his baseball lottery operating technique; a productive combination. The texture of operative facts woven out of the evidence received below precludes any result other than affirmance of the district court's judgment.

Judgment affirmed.

DUFFY, Chief Judge, concurs in the result.