## DE LA MAZA
### v.
### UNITED STATES.

### SAMSON v. UNITED STATES.
### Nos. 13948, 13949.

United States Court of Appeals,
Ninth Circuit.

Aug. 6, 1954.

Morris Lavine, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Louis L. Abbott, Hiram W. Kwan, Los Angeles, Cal., Thomas J. Sullivan, San Francisco, Cal., Ray H. Kinnison, Mark P. Robinson, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS, FEE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

We consider herein two identical appeals.

The defendants, while engaged as bookmakers in Pasadena during December, 1951, and January and February, 1952, did not register with the Collector of Internal Revenue and did not pay their registration fee to him. Their horse bookie business seems to have been incident to the running of a restaurant, which we understand was Mrs. Samson's.

The sections of the Internal Revenue Code requiring persons accepting wagers to register and pay a tax[1] were new in the winter of 1951–1952, being part of a further extension of federal power decreed by the Congress under a revenue measure.

The two defendants were separately indicted in September, 1952, for the failure of each to register and to pay his license tax. By the time of the indictments herein, the act of Congress had been challenged in several federal courts, the objection raised being that something is wrong when a man has to register with the federal government and in effect admit that he intends to commit what is usually a crime under state law, or, perhaps, federal law. The Fifth and

---

I. 26 U.S.C. §§ 3285–3294.

Tenth (even the Fourteenth) Amendments were relied upon by various defendants.

It appears herein that the parties, with the consent of the United States, after indictment decided to await the decision in United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754. While they waited they entered pleas of not guilty and waived a trial by jury. Then they entered into written stipulations with the government as to the facts. The practical effect of the facts stipulated to was to say, "If the statute is valid, then we are guilty." Eventually, United States v. Kahriger was handed down upholding the validity of the act. Then in due course the district court, upon the stipulated facts, found the defendants guilty and imposed sentence on each of them. No evidence was received from the witness stand.

Being sentenced to jail or prison, the defendants then changed lawyers, and come to this court attacking the validity of the act under which they were convicted and fighting to be relieved of their own stipulations, claiming that stipulations are no substitute for the trial to which they were entitled upon their pleas of not guilty.

■ In their brief, defendants place emphasis upon the fact that the elements of public trial in a courtroom with witnesses testifying, observation of witnesses and confrontation were not present. These are, of course, rights which must be zealously guarded, and if there were any indication in the record that the court had not been willing to let the defendants have all of their rights under the Sixth Amendment of the Constitution and any other rights to which they were entitled, this court would not hesitate a minute to strike down the convictions. But here we have a stipulation of facts fully concurred in by the defendants personally without the slightest suggestion of coercion.[2] Now, to permit defendants to say to the trial court, "We led you into error; the joke is on you," would display a system of justice hardly entitled to respect.

We digress a moment to observe that had these defendants been acquitted on the stipulations by the trial judge and then been reindicted, these defendants would have been the first to cite double jeopardy under the Fifth Amendment and, we add, rightly so. However, suggesting what the defendants would have done in case of acquittal is begging the question.

It was observed during the course of oral argument of these appeals that the point in defendants' brief that there was no trial as a consequence of the stipulation tended to shift to an argument that

2. After the Kahriger decision, cited above, which upheld the validity of the Act under which the indictments were brought, the defendants, Samson and De La Maza, appeared personally in court with counsel. The court's solicitude for the rights of the defendants which was apparent at all stages is well illustrated by the following extract from the record of April 20, 1953:

"The Court: * * * When we were last here, counsel on both sides agreed this case be submitted on the stipulated facts.

Mr. Robinson: That is correct.

Mr. Solomon: That is correct.

The Court: I don't know that we asked the defendants personally if they are agreeable to the procedure.

Defendant De La Maza: Yes, your Honor.

Defendant Samson: Yes, your Honor.

The Court: In saying that, you understand it is still your right to call any witnesses you desire to call, and it is your privilege to have the Government present its case and confront you with the witnesses against you so that you may be able to cross-examine them through your counsel, Mr. Solomon.

If you prefer to do that, we will go ahead. Otherwise, I have gone through the stipulation, and if you want it done that way, we will decide it on the stipulation.

Mr. Solomon: I have discussed the matter with them on several occasions and they are agreeable to submitting the matter as it now stands."

the court had no jurisdiction in the cases because one cannot, as a general proposition, stipulate to jurisdiction.

On the point "there was no trial," we believe it is well settled that a defendant in a case of the type we have herein may waive the presence of witnesses and may voluntarily stipulate to either a portion or all of the facts in a criminal case. Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500. Cf. concurring opinion of Chief Judge Denman in Joseph v. United States, 9 Cir., 145 F.2d 74.

■ As to the contention that the stipulation was futile because of the rule that one cannot stipulate to jurisdiction, we find little merit.

In our view of the case, after an offense under the laws of the United States was set forth and returned in the indictment, the district court had jurisdiction of both the subject matter and the persons of defendants at a point in time no later than the entry of defendants' pleas of not guilty. Probably complete jurisdiction existed at a stage earlier in the proceedings. Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062; Mosher v. City of Phoenix, 287 U.S. 29, 53 S.Ct. 67, 77 L.Ed. 148. In our view, the stipulation went only to evidentiary matters on the issue of whether a crime was committed.

■ However, if jurisdiction herein were an issue to be proved factually, it is well settled that one may stipulate to facts from which jurisdiction may be inferred. The Confiscation Cases, 20 Wall 92, 108, 87 U.S. 92, 108, 22 L.Ed. 320; Pittsburg, C. & St. L. Railway Company v. Ramsey, 22 Wall. 322, 89 U.S. 322, 22 L.Ed. 823.

■ These defendants on appeal, as they did in the district court, question the validity of the act under which they were convicted. United States v. Kahriger, supra, is conclusive against their contentions of invalidity.

The judgments of conviction are affirmed.