Joseph D'AGOSTINO, Claimant, of One 1957 Lincoln Premiere Two-Door Hardtop Coupe, Motor No. 57WA5592L, its tools and appurtenances, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15722.

United States Court of Appeals
Ninth Circuit.

Nov. 13, 1958.

Morris Lavine, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Richard A. Lavine, Burton C. Jacobson, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES and HAMLEY, Circuit Judges.

BARNES, Circuit Judge.

A libel was filed in the district court alleging the seizure of claimant's 1957 Lincoln automobile on February 28, 1957, from Joseph D'Agostino, because said automobile "had been used by said Joseph D'Agostino in receiving wagers without filing an application for a wagering permit, and without payment of wagering occupational tax, with intent to defraud the United States of the said taxes," in violation of Int. Rev. Code of 1954, §§ 4411, 4412; [1] and that the said automobile was subject to seizure and forfeiture pursuant to the provisions of Int.Rev. Code of 1954, § 7302.[2]

The district court made findings, ordered a judgment of forfeiture, and appeal is properly and timely taken in this Court.

Appellant urges two grounds for appeal: (1) that the evidence is insufficient to support the findings and judgment, and that the judgment is contrary to the law and the evidence; (2) that "Sec. 7301, of the Internal Revenue Act of (1924)" (sic) was unconstitutionally

1. 26 U.S.C. § 4411 reads: "There shall be imposed a special tax of $50 per year to be paid by each person who is liable for tax under section 4401 or who is engaged in receiving wagers for or on behalf of any person so liable."
26 U.S.C. § 4412 reads: *Registration. (a) Requirement.*—Each person required to pay a special tax under this subchapter shall register with the official in charge of the internal revenue district—
"(1) his name and place of residence;
"(2) if he is liable for tax under subchapter A, each place of business where the activity which makes him so liable is carried on, and the name and place of residence of each person who is engaged in receiving wagers for him or on his behalf; and
"(3) if he is engaged in receiving wagers for or on behalf of any person liable for tax under subchapter A, the name and place of residence of each such person.
"(b) *Firm or company.*—Where subsection (a) requires the name and place of residence of a firm or company to be registered, the names and places of residence of the several persons constituting the firm or company shall be registered.
"(c) *Supplemental information.*—In accordance with regulations prescribed by the Secretary, he or his delegate may require from time to time such supplemental information from any person required to register under this section as may be needful to the enforcement of this chapter."

2. 26 U.S.C. § 7302 reads: *Property used in violation of internal revenue laws.* It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property. A search warrant may issue as provided in chapter 205 of title 18 of the United States Code and the Federal Rules of Criminal Procedure for the seizure of such property. Nothing in this section shall in any manner limit or affect any criminal or forfeiture provision of the internal revenue laws, or of any other law. The seizure and forfeiture of any property under the provisions of this section and the disposition of such property subsequent to seizure and forfeiture, or the disposition of the proceeds from the sale of such property, shall be in accordance with existing laws or those hereafter in existence relating to seizures, forfeitures, and disposition of property or proceeds, for violation of the internal revenue laws."

construed in applying it to the facts of this case.

### I—Facts

It was stipulated that appellant D'Agostino was the registered owner of the Lincoln automobile and that he was not possessed of a federal wagering tax stamp.[3]

On February 27, 1957, Sam D'Agostino, brother of claimant below, was arrested on certain premises in Alhambra, California, charged with suspicion of bookmaking. (He was later convicted of bookmaking.) These premises consisted of a private apartment rented by claimant, with the telephone listed in his name. While police officers were on said premises, Joe D'Agostino called by telephone, and when told of Sam's arrest, made an appointment with an arresting police officer to meet him (Joe) at a nearby service station. There Joe allegedly admitted to the police officer it was his (Joe's) book, and that he (Joe) was interested in getting a copy of the betting markers or sheets so that he would not be faced with "false" claims of bettors who had in fact laid no bets. Joe gave the police officer $100 and arranged to meet him the next day, February 28, 1957, at another service station. Both on the 27th and the 28th, Joe D'Agostino drove to the appointed places in the libeled automobile. On the 28th the claimant copied the betting markers or sheets supplied to him for that purpose by the police officer. He did this in the police car. The claimant "copied both the owe-sheets (of a prior business day) and the betting markers."

On the government's case in chief, an officer testified that at the police station where claimant was questioned respecting his previous payment of $100 to the officer, claimant had told the police he had used the libeled Lincoln automobile to make weekly visits to his bettors so that he could either pay or collect the amounts lost or won. On February 28, 1957, when Joe D'Agostino was arrested, he was seated in the libeled Lincoln car, and had "betting markers" on him, i. e., what he had copied from the sheets and markers seized by the police from his apartment. No other betting markers were found on claimant, nor in the automobile.

At the hearing of the libel, Joe D'Agostino flatly denied that he used the Lincoln car to receive wagers; denied he was interested in his brother Sam's bookmaking; stated that he tried to get the sheets only to help his brother and thus prevent false claims being made against him; that while he (Joe) had previously engaged in bookmaking, he had not been so engaged for two and one-half years.

On rebuttal, evidence of alleged conversations with Joe D'Agostino were related by a police officer in which claimant allegedly admitted he was running several bookmaking spots, including the one operated by Sam D'Agostino in Alhambra.

There was then offered and received in evidence a tape recording of an interview between police officers and claimant in the police building on February 28, 1957. The proper foundation was laid for its introduction. In the recording (Gov. Ex. 1), Joe D'Agostino stated flatly: "I'm a bookmaker"; stated that the apartment where his brother was arrested was his (Joe's); the telephone was his; and "the book" was his. ("Of course, yes. The book was mine. I lied * * * [when] * * * I told him I wasn't booking. I said, 'I'm not booking. I lied to him, too.'") The claimant told in detail how he ran his bookmaking business and how he made use of the Lincoln car in it.[4]

3. Required by Int. Rev. Code of 1954, § 4411, for those engaged in the wagering business.

4. "Q. I see. In other words, then you take your car and you go around to each one of your bettors on a weekly basis? A. On a weekly basis.
"Q. On Mondays? A. Yah, Mondays and Tuesdays.

## II—Law

■ The trier of fact concluded that the evidence before him was sufficient to establish that the claimant used the libeled Lincoln car to violate the provisions of the Internal Revenue laws. We agree.

■ An action of this type is civil in nature. The government has the burden of proving the material allegations of the libel but not beyond a reasonable doubt. Anderson v. United States, 5 Cir. 1950, 185 F.2d 343. Facts justifying forfeiture need be established only by a preponderance of the evidence. United States v. One 1955 Mercury Sedan, 4 Cir. 1957, 242 F.2d 429, and cases cited therein. Extra-judicial admissions of the owner established the fact that the car was used in violation of the Internal Revenue laws. Since the action was, in effect, against the owner of the car as well as the car itself, the owner's admissions against interest justify a conclusion that the car was being used unlawfully. See Ted's Motors v. United States, 8 Cir. 1954, 217 F.2d 777. Judgments of forfeiture have previously been ordered on mere circumstantial evidence. United States v. One 1955 Mercury Sedan, supra. What we have here is far more substantial.

■ Appellant urges that the recorded statements of D'Agostino were rebuttal and could not prove the material charges of the libel. We disagree. If the rebuttal goes, not to a collateral issue, but to the very heart of the case, and if it was believed by the trial judge, it is sufficient to establish and satisfy the necessary burden of proof resting on the government that claimant used the automobile—not *in* which to receive bets, but in which to *transport* the law violator and his gambling records. It was a greater use than merely using an automobile to commute to the site of illegal business operations. In this respect it differs from United States v. Lane Motor Co., 1953, 344 U.S. 630, 73 S.Ct. 459, 97 L.Ed. 622—the only case cited by appellant on this point.

In United States v. One 1953 Oldsmobile Sedan, D.C.W.D.Ark., 1955, 132 F. Supp. 14, the court ordered forfeiture. There the automobile was used only to keep the bookmaker in contact with the bettors and enable him to pay or collect at different places. There was no proof that the automobile was used to transport betting paraphernalia.

That § 7302 of the Internal Revenue Code is applicable here, is the holding in United States v. General Motors Acceptance Corp., 5 Cir. 1956, 239 F.2d 102, citing United States v. One 1952 Lincoln Sedan, 5 Cir. 1954, 213 F.2d 786; Jarrett v. United States, 4 Cir. 1950, 184 F.2d 532; United States v. Ganey, 5 Cir. 1950, 183 F.2d 273; One Ford Tudor Automobile, etc. v. United States, 5 Cir. 1947, 164 F.2d 1020. Cf. United States v. Jones, 5 Cir. 1952, 194 F.2d 283.

■ The suggestion that § 7302 (not § 7301 as appellant urges) is unconstitutional or unconstitutionally applied has no merit. This section and similar sections under prior laws was intended to aid in the enforcement of revenue laws by providing for such forfeitures. United States v. One 1950 Ford Half-Ton Pickup Truck, 6 Cir. 1952, 195 F.2d 857. The occupational tax on those accepting wagers or engaging in the wagering business is a valid exercise of the federal taxing power. United States v. Kahriger, 1953, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754; De La Maza v. United States, 9 Cir. 1954, 215 F.2d 138. Un-

"Q. You have to make one trip a week in your car to all your bettors to—— A. I'll——

"Q. By Sgt. Dole: That's where you've been going when we've been following you whenever you've been driving that Lincoln, huh? A. (*) I didn't know you were following (*).

"Q. By Sgt. Lievan: Put it another way, if we had been following you on Mondays, we'd have seen you go to all your bettors; right? A. That's right. Monday and Tuesday, with the exception —I'll be honest with you, with the exception of Thursday night, I straighten up one account down at the fights. He's got four or five customers." [Tr. pp. 104–105.]

der the Constitution, art. I, § 8, the Congress has the power to lay and collect taxes, and to make all laws necessary and proper for carrying into execution this power. It is not for us to say that § 7302 is not such a law, absent some showing by appellant that such is the case.

The judgment of forfeiture is affirmed.