**UNITED STATES of America,**
**Libellant, Appellant,**

v.

**Milton F. FRANK et al., Claimants, etc.,**
**Appellees.**

**No. 17209.**

United States Court of Appeals
Fifth Circuit.

April 16, 1959.

———◆———

E. Coleman Madsen, Asst. U. S. Atty., James L. Guilmartin, U. S. Atty., Jacksonville, Fla., for appellant.

John W. Muskoff, Jacksonville, Fla., for appellees.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This appeal by the United States is taken from an order granting the return of money seized by federal agents for violations of the internal revenue laws.[1]

No brief was filed in this Court by any of the appellees. In the trial court appellees introduced no evidence on their own behalf except for the testimony of an internal revenue agent regarding the physical layout of the premises upon which the money was seized. The trial court, sitting without a jury, found or concluded that the United States had "failed to prove that the monies were intended for use in violating the provisions of the Internal Revenue Laws"[2] which make it unlawful to carry on the business of accepting wagers without having registered or paid the special occupation tax required by these provisions.

The pertinent facts relative to the money awarded to claimant Frank may be briefly stated. Government witness Truett testified that he visited the raided premises—a billiard parlor and lunch stand in Jacksonville, Florida—on several occasions. He testified that he placed bets and was paid for those he won, and he was also paid for free games he won on pinball machines located there. He dealt with three of the claimants, Frank, Laburtis and Wilson, on one or another of these occasions.

On the day of the raid by internal revenue agents, Truett and a special internal revenue agent made a visit to the billiard parlor and remained there until the other agents arrived with a search

1. 26 U.S.C.A. §§ 4411, 4412, 4461, 4462. The money was libeled in accordance with 26 U.S.C.A. § 7302, the pertinent part of which provides:

"It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property. * * *"

2. Note 1, supra.

warrant. Upon his arrival he placed a cash bet with Frank. The money he paid was not marked and was therefore not physically traced to the sums later found on Frank's person. Although Frank did not remain in Truett's sight every minute of the time up to the moment of the raid, he did stay there for all but a few minutes of this time. When the raiding party entered the billiard parlor, Frank apparently attempted to flee the premises but he was apprehended and arrested. The sum of $1,778 in cash and currency was taken from him, and it is to this portion of the libeled $2,826.32 which he claims title. At the time of the seizure, Frank was asked what he was doing there, and he replied, "Just gambling."

In addition to receiving a four dollar cash bet from Truett on the day of the raid, Frank was also observed making numerous telephone calls and making notations on a scratch pad. A scratch pad taken from him at the time of his arrest appeared to bear the imprint of a penciled notation of a $120 bet on a baseball game.[3] In the room where all these events took place there was a television set, a radio, a scoreboard, and a blackboard upon which there were posted the betting odds on current baseball games. The television set and radio have been forfeited to the United States.

At no time has claimant Frank offered any explanation of why he was carrying such a large amount of cash in his pockets. His failure to do so may, under the circumstances here related, be taken by the trier for what it is worth along with the other evidence in the case.

Under these circumstances, finding that none of the money taken from Frank was held by him for use in carrying on the business of accepting wagers without registering or paying the special occupational tax was clearly erroneous and the judgment must therefore be reversed.

From the evidence relative to the others to whom the District Judge awarded a part of the seized money, while not entirely clear, it appears that Luther J. Wilson was the owner of the premises, that Junius Mason Elliott operated the food concession and owned or was in charge of the cash register from which it is contended that a portion of the libeled money was taken; and that the following events transpired on these premises: Wilson paid witness Truett his winnings on a bet he had placed with Frank and also paid Truett for games he had won on pinball machines; he paid one of these bets out of the cash register; Elliott sold football lottery tickets and received twenty-five per cent. of the proceeds, and Stanley J. Laburtis accepted bets on several occasions including the day of the raid.

We think these acts of the latter claimants, when taken with the evidence as a whole, established that some of the money claimed by them had been used or was held with intent to be used in violation of the internal revenue laws and was therefore forfeit, and that judgment

---

3. Without objection witness Adair testified as follows:

"Q. All right. Then you placed him under arrest there? Then what did you do with him? A. Took him back and placed him against the wall and frisked him and told him to stand there for a minute until the situation was quiet. And Mr. Truett and I took him to the rear room. I again told him that he was under arrest and told him who I was and told him that anything—any statement that he would make must be voluntary; that I wasn't going to compel him. I asked him then to put the contents of his pockets out on the table and he reached in and counted out about $1,778.00; It's noted or an envelope there. And Mr. Truett counted the money and Mr. Frank counted the money, and we put the amount on the outside of the envelope and then sealed it. Mr. Frank and I each initialed across it. I asked Mr. Frank what he was doing there and he said, "Just gambling."

"Q. Did he have any other pieces of paper on his person; do you recall? A. He had a small white pad, which contained no pencil notations at the time he laid it on the table, but you could see the imprint of a pencil on it and it appeared to be $120.00 bet on a baseball game."

must therefore be reversed for a correct determination thereof. Because also of the overly informal character of the hearing there is lack of proof as to just what amounts of money were taken from each of these individuals. And furthermore, in the case of Wilson the record does not contain any answer or claim filed by him and there is no sufficient evidence, direct or circumstantial, to show what amount he might be entitled to. To afford an opportunity, therefore, for a trial and determination in accordance with the law and the facts, the judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.