**UNITED STATES of America**

v.

**$4,298.80 IN CURRENCY, one check in the amount of $105.54, and two race track tickets total value $50.**

**Civ. A. No. 11456.**

United States District Court
D. Maryland,
Civil Division.
Dec. 15, 1959.

252

Leon H. A. Pierson, U. S. Atty., John R. Hargrove, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Maurice T. Siegel, Henry Miller, Baltimore, Md., for defendant.

CHESNUT, District Judge.

This case is a libel for forfeiture of $4,298.80, and some other smaller items,

because it was property used in gambling operations when the possessor from whom it was taken had not complied with the requirements of the Internal Revenue Code by failing to purchase a $50 tax stamp under 26 U.S.C.A. § 4411. Section 7302 of title 26 U.S.C.A. provides in substance that property used or intended to be used in violation of Federal Internal Revenue Laws shall be subject to forfeiture. The full text of section 7302 is set out in the margin.[1]

The case was tried non-jury. Very succinctly stated, the facts found are as follows:

1. Prior to May 8, 1959 Agents of the Treasury Department suspected that one Robert William Cosgrove, Sr., who had not purchased a federal tax stamp for gambling, was engaged in bookmaking activities for "off race track" betting at Gussie's Downbeat, 4713 Eastern Avenue, Baltimore, Maryland. The Government Agent, Ernest E. Nizer, visited that place on five separate occasions, in May of 1959, to watch the activities of Cosgrove, who locally was known as "Bob". On some occasions Nizer was accompanied by another Agent. On these occasions Nizer saw "Bob" receive telephone calls, make brief notations on small slips of paper, sometimes receiving apparently small sums of currency from others in the place, and making other notations contemporaneously. Without describing the activities in more detail it is sufficient to say that I find from the evidence that the activities were typical of "off race track bookmaking" according to the general understanding of that activity.

1. "§ 7302. Property used in violation of internal revenue laws. It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property. A search warrant may issue as provided in chapter 205 of title 18 of the United States Code and the Federal Rules of Criminal Procedure for the seizure of such property. Nothing in this section shall in any manner limit or affect any criminal or forfeiture provision of the internal revenue laws, or of any other law. The seizure and forfeiture of any property under the provisions of this section and the disposition of such property subsequent to seizure and forfeiture, or the disposition of the proceeds from the sale of such property, shall be in accordance with existing laws or those hereafter in existence relating to seizures, forfeitures, and disposition of property or proceeds, for violation of the internal revenue laws."

On one or more occasions Nizer, under the name of "Ed", placed small bets with Cosgrove, saw him put the money received from "Ed" in his pocket and saw him place other currency received from other apparent bettors in his pocket. On another occasion "Bob" paid "Ed" $13 which he had won on a bet placed with "Bob". On May 27, 1959 "Ed", in company with another Agent, placed another bet with "Bob" in the amount of $3, and paid him with three $1 previously marked bills.

2. Shortly theretofore Nizer had obtained a warrant for arrest and on May 27, 1959 "Bob" was arrested. In the search of his pockets, two of the three marked bills were found in his possession. "Bob" was taken to the local office of the Agents where he was searched in connection with his arrest.

3. An inventory was made by three Agents of the contents of the several pockets of his shirt and trousers. In his left front pants pocket the amount of currency in all was $654, including twenty-eight $1 bills, two of which were the marked bills.

4. In his left rear hip pocket there was a wallet containing $600.40 in currency and an apparently properly endorsed check in the amount of $105.54, and two race track tickets from the Shenandoah Race Track. Also in his wallet were obviously personal cards consisting of motor vehicle operator's license, identification cards, receipts and the like. In addition in the same pocket was other currency in large denominations in the amount of $2,000.

5. In his right hip pocket was an Armstrong Daily News Review (referred to at the trial as a scratch sheet). From his waistband three slips of paper fell, described as follows: One containing names and figures, another containing names of horses, figures, initials and names and the third of which was blank.

6. In the right rear pants pocket was found $1,004.40 in currency and $40 in the right breast pocket.

I think this evidence clearly made out a prima facie case for the forfeiture of the whole of the money as property used or intended to be used in a gambling operation. That conclusion has been reached on very similar evidence in at least three federal cases; United States v. Currency in the total of $2,223.40, D.C. N.Y.1957, 157 F.Supp. 300; United States v. $1,508.40, D.C.Ill.1958, 158 F. Supp. 916 and United States v. Leveson, 5 Cir., 1959, 262 F.2d 659.

In the absence of evidence by the defendant to the contrary the Government would have been entitled to a judgment for forfeiture of all the currency. However, in this case, different from others of the same kind, the defendant has offered his own personal evidence to rebut entirely or in part the prima facie case made out by the Government.

With respect to the currency found in the defendant's left front pants pocket, he admits that this money was used or intended to be used by him in gambling and that it is subject to forfeiture because he had no federal tax stamp. But with respect to the remainder of the currency he contends that it should not be forfeited. The issue clearly is whether the money was property used or intended to be used in gambling operations. Bookmaking on off-track horse races is clearly illegal in Maryland and when engaging in gambling transactions without having obtained the requisite federal $50 tax stamp, property used or intended to be used in gambling, is subject to forfeiture.

The defendant's contention is that the currency other than that which is admittedly subject to forfeiture, to wit the $654 in his left front pants pocket, should not be forfeited because it was not in fact used or intended to be used in gambling but was money which over a period of years he had saved. He said he had no bank account and that the reason he had this large sum of money in his pants pockets was because there was no one at his home that day. It is not contended by counsel for the defendant that the money is not property subject to forfeiture if used or intended to be used in gambling. The narrower question in the case then is whether as a matter of fact

254

the rest of the money was intended to be so used. The Government's evidence in the case warrants the inference and conclusion that the bookmaking business in which the defendant was engaged would require from time to time substantially large sums of money. If a considerable number of the bets he accepted resulted in "wins" at large odds, the amount that he might have to pay out on any one day could well be several times the amount that he had taken in on that day. He admits that $654 was for moneys received in betting. And it would seem quite inferable that $3,000 or $4,000 more would not be an unreasonably large amount to have as a reserve to meet losses.

The defendant did not offer any information in detail with regard to the daily or usual volume of his business as to number and amount of bets and of losses or as to whether he was the sole individual proprietor of his business or whether he was merely an agent for others. I cannot accept his statement that he was carrying such a large sum of currency merely for safekeeping. On that point I find upon consideration of all the evidence in the case, including his own, that the currency found in his immediate possession was in fact property used or intended to be used in violation of the internal revenue laws; with the exception now to be mentioned.

I make this exception with respect to the money found in the defendant's wallet amounting to $600.40. The wallet contained obviously much purely personal papers having no inferential relation to his gambling business. It also contained a properly drawn check for $105.54, properly endorsed by the payee, and two "winning" race track tickets from the Shenandoah Race Track. With respect to the check, the defendant stated that he had been acting as barkeeper for Gussie's Downbeat and that as an accommodation he had at times cashed checks for customers. And as to the winning tickets, he said that he had personally visited the Shenandoah Race Track and had made a successful bet but had not cashed the tickets at that time. I think there

is a plausible distinction to be made between the money in the defendant's wallet and the rest of the currency that he had in his possession.

█ It is not disputed that this action is one of a civil nature as distinguished from a criminal case and that the measure of proof required from the Government is merely a preponderance of the evidence; not beyond a reasonable doubt. The total amount of the currency seized by the Government Agents was $4,298.80. The amount found in the defendant's wallet and also the check and win tickets should be excluded from the forfeiture. Under all the evidence I find that the Government has failed by a preponderance of the evidence to show that the currency and other contents of the defendant's wallet were used or intended to be used in violation of the law.

The sum of $4,298.80 less $600.40 must be forfeited to the United States. The Clerk is therefore instructed to enter judgment in favor of the plaintiff for $3,698.40.