**UNITED STATES of America,**
**Libellant,**

v.

**$2,117.41 IN CURRENCY OF the UNITED STATES, Libellee.**

**Civ. A. No. 14189–4.**

United States District Court
W. D. Missouri, W. D.
June 26, 1963.

F. Russell Millin, U. S. Atty., by Clifford M. Spottsville, Asst. U. S. Atty., Kansas City, Mo., for libellant.

William H. Ergovich, Kansas City, Mo., for libellee.

BECKER, District Judge.

This is a civil proceeding in which the libellant seeks to enforce the forfeiture to the United States of the currency described in the style of this cause.

The proceeding is based upon the provisions of the 1954 Internal Revenue Code, section 7302 (Title 26 U.S.C.A., section 7302). Libellant charges that said currency was intended for use, held for use or had been used in violating the provisions of the Internal Revenue Laws of the United States.

The libel charges generally that the currency in question was had, possessed and intended for use, and had been used in violation of the Internal Revenue Laws by one Jerry Lasker. It is charged that on or about September 12, 1962, in Kansas City, Missouri, Lasker was engaged in the business of accepting wagers on horse races and sporting events without having paid the special tax imposed by Title 26 U.S.C.A., section 4411.

No question is raised as to propriety of the preliminary proceedings herein. Claimant Lasker filed an answer to the libel which admits the seizure of the moneys in dispute from his personal possession, custody and control. He alleges that it was and is his property. He denies that said moneys were intended to be used or had been used in violating the provisions of the Internal Revenue Laws. A hearing was held before the Court without a jury. Documentary and oral evidence was offered by the United States. The claimant did not testify nor did he present any evidence in support of his claim. The parties have submitted their briefs and the issues are before the Court for determination.

### FINDINGS OF FACT

The undisputed oral evidence produced at the trial by the United States discloses that on April 12, 1962, before the seizure in question, the claimant was arrested by the Kansas City, Missouri, Police Department for gambling activities, at which time the sum of $2,543.16 was seized from him; that this sum was returned to him June 14, 1962; that the claimant had purchased a gambling tax stamp covering the period from December 1, 1961, to June 30, 1962, but had not purchased such a stamp for the fiscal year beginning July 1, 1962.

One Lyons, a special agent of the Internal Revenue Service placed the claimant under surveillance on August 20, 1962, and on two occasions observed the claimant receive money from individuals on the street near his hotel. He again observed the claimant on August 28, 1962, and saw him receive a note from a man on the street. On August 29, 1962, he observed the claimant receive a small pink paper from a man in front of his hotel. On September 11, 1962, on three different occasions he observed individuals meet the claimant in front of his hotel and enter the hotel lobby with him for short periods of time.

On September 12, 1962, agent Lyons, in company with Sergeant Travis of the Kansas City, Missouri, Police Department, Cecil Reed, a Deputy United States Marshal, and Arthur R. Ryan, another special agent of the Internal Revenue Service, was proceeding to the claimant's hotel with a warrant for his arrest and a search warrant. These officers encountered the claimant on the street approximately one block from his hotel. At agent Lyon's request the claimant agreed to accompany the group to his hotel room.

At the claimant's hotel room Lyons read the warrants, advised the claimant of his rights, and asked him to empty his pockets. Claimant's pockets yielded a wallet containing no money, a set of keys, a packet of pink slips and $917.41. Claimant was carrying a rolled up newspaper containing racing information. Concealed therein were (1) a bet slip which the claimant admitted contained information relative to a bet he had taken that day and (2) a slip which claimant first admitted included betting losses of persons and other debts owed to him, but which he later said contained only notations pertaining to debts owed to him for personal loans made by him.

Sergeant Travis searched the clothes closet in claimant's room. He found $1,200.00 in the pocket of an overcoat stored in this closet but not used or ready for use on this warm day in September. The claimant told the officers and agents that this money remained from a sum of $2,543.16 seized by the Kansas City, Missouri, Police Department at the time of his arrest on April 12, 1962, which was later returned to him on June 14, 1962.

It was stipulated that the Baltimore Bank was within one and one-half blocks of claimant's hotel and that the banking center of Kansas City was within a ten block radius of said hotel.

### CONCLUSIONS OF LAW

In a libel action such as this the burden is upon the Government to show the existence of the elements necessary to warrant a decree of forfeiture as authorized by the statute and as alleged in the libel. United States v. Regan, 232 U.S. 37, 34 S.Ct. 213, 58 L.Ed. 494. In this case, the facts as to violation of the

law by the claimant on September 12, 1962, and his possession of the currency in question appear without serious dispute. Therefore, the principal burden of the Government is to establish that the currency in question was intended for use in violating the provisions of the Internal Revenue Laws, or had been so used. 26 U.S.C.A., section 7302. The burden thus imposed upon the Government is satisfied by proof which establishes the necessary facts by a "reasonable preponderance of the evidence." United States v. 673 Cases of Distilled Spirits and Wines (D.C.D.C.) 74 F.Supp. 622, l. c. 626.

■ As indicated in the evidence here, the claimant was observed meeting persons on the street, receiving money, and receiving slips of paper. In his possession was a betting slip listing bets to win on horses running at Aqueduct and Atlantic City later in the day.

A sufficient amount of ready cash to meet the demands of the trade would appear to be a necessary and closely related implement or facility of the wagering business as here transacted on the streets and in public rooms of hotels. United States v. Ryan, 284 U.S. 167, l. c. 176, 52 S.Ct. 65, 76 L.Ed. 224.

The claimant was found to have in his trouser pockets, separate from his billfold, $917.40 in loose cash, while at the same time he had on his person pink slips, a newspaper dated September 12, 1962, containing racing information on races run and to be run, a bet slip, a slip bearing names, initials, and figures of debts owing to him. A racing form dated September 12, 1962, was found in claimant's room. The claimant did not take the stand to explain his possession of $917.40 in his pockets nor to shed any light on the use for which it was intended or the manner in which the listed debts were contracted. It is unnecessary in this case to consider against claimant his failure to testify in this civil proceeding. See, however, United States v. Frank (C.A.5) 265 F.2d 529; United States v. Leveson (C.A.5) 262 F.2d 659.

A consideration of all these factors leads to the conclusion that the libellant has established by a preponderance of the evidence the necessary relationship between the $917.40 found in claimant's pocket and the undenied violation of the Internal Revenue Laws.

■ However with regard to the $1,200.00 found in the pocket of the overcoat in the closet of claimant's hotel room, the libellant has failed to meet this burden of proof.

While the claimant did not testify at the trial, he did explain to the agents and officers who searched his room that the $1,200.00 in his overcoat pocket was the remainder of the $2,543.16 returned to him in June, 1962, after it was seized in April, 1962, by the Kansas City, Missouri, Police Department and returned. The libellant argued that, in view of the close proximity of claimant's room to a large number of banks, it was improbable that he would keep large amounts of cash on hand unless it was cash necessary for the carrying on of his "business." While it is perhaps unusual for a person to keep large sums of money in his dwelling place rather than in a bank, it is not so unusual as to be improbable. Since none of the Government's witnesses ever saw claimant put any of the money he received from persons on the street in the cache in his overcoat pocket (United States v. $1,058.00 (W.D.Pa.) 210 F. Supp. 45, l. c. 50), and since this money was physically separated from the money and gambling paraphernalia seized from claimant's person (United States v. $4,298.80 (D.Maryland) 179 F.Supp. 251, l. c. 254; United States v. One Thousand Five Hundred and Eight Dollars and Forty Cents (S.D.Ill.) 158 F.Supp. 916, l. c. 918) there is a plausible distinction to be made between the money in the claimant's overcoat pocket in the closet of his room and the rest of the currency which was seized from his person. It is concluded that the Government has failed to show by a preponderance of the evidence that the $1,200.00 in the overcoat pocket had been used, or was intended to be used, in violation of the Internal Revenue Laws.

### JUDGMENT

It is therefore

Ordered, adjudged and decreed that the sum of $2,117.41 less $1,200.00, or $917.41, be, and the same is hereby, forfeited to the United States. The Clerk is therefore instructed to enter judgment in favor of the libellant for $917.41. It is further

Ordered, adjudged and decreed that the sum of $1,200.00 is the property of the claimant and that said sum be returned to him.