**UNITED STATES of America,
Libelant-Appellee,**

v.

**UNITED STATES COIN AND CURRENCY IN the AMOUNT OF $8,674.00,
Respondent,**

**Donald Angelini, Claimant-Appellant.**

**No. 15502.**

United States Court of Appeals
Seventh Circuit.

June 27, 1967.

Rehearing Denied Aug. 9, 1967.

Anna R. Lavin, Richard E. Gorman, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Edward J. Murray, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., of counsel, for appellee.

Before KILEY, FAIRCHILD and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

In this libel, the respondent money was seized under Section 7302 of the Internal Revenue Code (26 U.S.C. § 7302) on the ground that it was being used in violation of the internal revenue laws. The money was seized from the person of Donald Angelini on August 24, 1963. In August 1963, Angelini was engaged in the business of accepting wagers at

Sportsman's Park racetrack in Cicero, Illinois. His 1964 conviction for failing to pay the special occupational tax on wagers and for failing to register with the District Director of Internal Revenue (26 U.S.C. §§ 4411 and 4412) was affirmed by this Court in United States v. Angelini, 346 F.2d 278 (7th Cir. 1965), certiorari denied, 382 U.S. 838, 86 S.Ct. 86, 15 L.Ed.2d 80. In that case, the evidence was summarized as follows (346 F.2d at p. 280):

"on a number of occasions during the month of August 1963 the defendant was observed at Sportsman's Park, a Cicero, Illinois, race track, receiving money from persons with whom the government agents had placed wagers on the horse races being run. On these occasions he was observed making notations. A search, subsequent to his arrest at the track, revealed he had $8,674.00 on his person and documents identified by an expert witness as 'recap sheets' showing net gain or loss for wagering operations at the end of any particular race. On one of these sheets a column of figures designated by the letter 'R' corresponded exactly with a record of wagers seized from Joe 'Red' Altiere at the time of the latter's arrest. Altiere was one of the individuals with whom the government agents had placed wagers and who had been observed handling money to the defendant." [1]

Here the District Court found that the $8,674 was being used in this bookmaking business in violation of the internal revenue laws and consequently ordered forfeiture. On appeal, it is contended that the evidence was insufficient to sustain the judgment of forfeiture and that the underlying statutory provisions violate the self-incrimination clause of the Fifth Amendment.

In the prior *Angelini* case, the $8,674 found on claimant at the time of his arrest was an important link in the Government's evidence and one of the factors justifying an inference that he was engaged in the business of accepting wagers. Since the possession of the $8,674 was one of the elements supporting Angelini's conviction, he may be collaterally estopped from denying that the respondent money was an integral part of the bookmaking business being used in violation of the internal revenue laws. Cf. Emich Motor Corporation v. General Motors Corp., 340 U.S. 558, 568-569, 71 S.Ct. 408, 95 L.Ed 534. But even apart from the doctrine of collateral estoppel, an inference that this money was being used in illegal wagering was justified from the evidence in the forfeiture case itself. This record shows that Angelini was responsible for paying off bets taken by other members of the bookmaking ring. His "recap sheets" indicate that the dollar volume of this business was substantial. Angelini would obviously need enough money on hand to pay off the betting customers. As noted in United States v. $2117.41, 218 F.Supp. 351, 353 (W.D.Mo.1963):

"A sufficient amount of ready cash to meet the demands of the trade would appear to be a necessary and closely related implement or facility of the wagering business as here transacted on the streets and in public rooms of hotels." [2]

Under this ready cash theory, it was unnecessary for the Government to show that the respondent money was actually received by Angelini from bettors on August 24, 1963, the date of seizure.

In our view the Government made out a *prima facie* case before the District Court. It was reasonable to conclude from the "recap sheets" and other evidence that Angelini was participating in a bookmaking operation when arrested. The unusually large amount

---

1. Altiere's wagering tax conviction was also affirmed. United States v. Altiere, 343 F.2d 115 (7th Cir. 1965), remanded, 382 U.S. 367, 86 S.Ct. 529, 15 L.Ed.2d 420.

2. See also United States v. $4298.80, 179 F.Supp. 251, 254 (D.Md. 1959).

**948**

of cash scattered throughout his pockets was vital to his part in the wagering operation. Here the burden of persuasion had shifted to claimant. By standing mute, he failed to discharge that burden. His silence was strong confirmation of the charges. Local 167 of International Brotherhood of Teamsters etc., v. United States, 291 U.S. 293, 298, 54 S.Ct. 396, 78 L.Ed. 804; Stagner v. United States, 197 F.2d 992, 994 (5th Cir. 1952). Although claimant now complains that some of this money may not have been used in his wagering business, he had ample opportunity to take the stand to explain what portion of the $8,674 was not so used.

■ The judgment below was based on two provisions of the wagering statutes requiring registration and payment of an occupational tax. The claimant urges that those provisions, namely, Sections 4411 and 4412 of the Internal Revenue Code (26 U.S.C. §§ 4411 and 4412), violate the privilege against self-incrimination contained in the Fifth Amendment. Knowing that the Supreme Court was reconsidering this question, we withheld releasing this opinion pending the outcome of Marchetti v. United States, 385 U.S. 1000, 87 S.Ct. 698, 17 L.Ed.2d 540, and Grosso v. United States, 385 U.S. 810, 87 S.Ct. 47, 17 L.Ed.2d 53. However, at the close of its last Term, the Supreme Court restored those two cases to the docket for reargument during its October 1967 Term. Rather than delay this litigation further, we reject claimant's constitutional argument on the authority of United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754, and Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475; but cf. Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165.

The other points raised by claimant were disposed of in this Court's earlier *Angelini* opinion, and we decline to depart therefrom.

The judgment of the District Court is affirmed.