UNITED STATES of America, Plaintiff,

v.

$6,500 IN UNITED STATES
CURRENCY, Defendant.

Civ. No. 82–6047.

United States District Court,
W.D. Arkansas,
Hot Springs Division.

April 30, 1984.

---

W. Asa Hutchinson, U.S. Atty. by Larry R. McCord, Asst. U.S. Atty., Fort Smith, Ark., for plaintiff.

Ray S. Smith, Jr., Wood, Smith & Schnipper, Hot Springs, Ark., for defendant.

## MEMORANDUM OPINION

OREN HARRIS, Senior District Judge.

This matter came on for trial pursuant to regular notice on April 24, 1984. The parties stipulated a substantial portion of the facts of the case and the Court heard the testimony of Internal Revenue Service Special Agents George Stewart and Harry Bostwick on behalf of plaintiff and of Theodore Skrivanos on his own behalf. Based upon said stipulation and testimony, together with the exhibits admitted into evidence, the Court makes the following findings of fact and conclusions of law.

## I—FINDINGS OF FACT

1. Investigators of the Arkansas State Police provided to agents of the Internal Revenue Service telephone toll records of two residents of Pine Bluff whose wagering activities were under investigation.

2. The telephone toll records of one of the Pine Bluff suspects reflected that he had made over 160 long distance calls of short duration to 501–623–9151 from January 1, 1981 through October 31, 1981, and over 107 calls to 501–624–7726 from February 7, 1981 through April 30, 1981.

3. Telephone number 501–623–9151 was listed under the name of Ted Skrivanos at 103 Dexter, Hot Springs, and 501–624–7726 was listed under George Gateway at 128 Hickory, Apt. 17, Hot Springs.

4. Agents of the Internal Revenue Service then obtained telephone records of the Pine Bluff resident for November 1, 1981 through February 4, 1982, which records reflected 32 calls of short duration to 501–624–9375 (Skrivanos' business, Bowlers Lounge, Hot Springs) and 40 such calls to 501–623–9151 (Skrivanos' Dexter Street residence).

5. During the period from February 9, 1981 through February 24, 1981, Skrivanos was observed leaving his business, Bowlers Lounge, at approximately 12:15 p.m. each day and proceeding to Apt. 17 at 128 Hickory Street, where he remained until approximately 4:45 p.m.

6. Telephone number 501–624–7726 listed to George Gateway at 128 Hickory, Apt. 17, was no longer operational. However, number 501–321–2721 was listed to Gateway at the same address.

7. The name George Gateway was an alias used by Ted Skrivanos.

8. Cooperating individuals placed wagers with Skrivanos in the presence of agents of the Internal Revenue Service by calling 501–321–2721 (Apt. 17 at 128 Hickory) and 501–767–4359.

9. Telephone number 501–767–4359 was listed to Joe Taylor at 3218 Albert Pike in Hot Springs. Skrivanos was observed leaving that address carrying a brown paper bag.

10. A search of Internal Revenue Service records in Austin, Texas reflected that neither Skrivanos nor anyone by the names of George Gateway or Joe Taylor had filed the required forms nor paid the special wagering tax for the relevant time period.

11. Pursuant to search warrants executed on March 5, 1982, an intercom, bet slips, and various other wagering paraphernalia were seized from the 3218 Albert Pike address; notebooks containing "point spreads" on sporting events were seized at

418 Third Street; $6,500.00 in currency, an eavesdropping detector, settlement sheets, and various other wagering paraphernalia were seized from the 103 Dexter Street address; a list of betters and settlement sheets were seized from a 1970 Volkswagen, Arkansas license DHM 472; and assorted papers listing bets, names and addresses were seized from Skrivanos' person.

12. When the search warrant for Skrivanos' person was executed, he was observed accepting wagers by telephone at the 3218 Albert Pike address.

13. Six thousand and five hundred dollars in United States currency was discovered in Skrivanos' residence on Dexter Street. The currency was found concealed in the pockets of two coats in a bedroom closet. On the top shelf of the same closet the special agents found a bank bag marked "Ted-Personal." The bank bag contained settlement sheets and various other gambling paraphernalia.

14. On June 11, 1982, Skrivanos pled guilty before Magistrate Henry Jones to failure to pay wagering tax in violation of 26 U.S.C. § 7203.

## II—CONCLUSIONS OF LAW

1. This Court has jurisdiction of the cause pursuant to 28 U.S.C. §§ 1345, 1355, 1395 and 2461 *et seq.*, by reason of the provisions of 26 U.S.C. §§ 7402(a) and 7323.

■ 2. The term "wager" includes any bet with respect to any sports event or contest placed with a person engaged in the business of accepting such bets. 26 U.S.C. § 4421(1)(A).

■ 3. Every individual engaged in the business of accepting such wagers is responsible for remitting a 2% excise tax with Form 730. 26 U.S.C. § 4401.

■ 4. In addition, a special tax of $500 per year is imposed upon every person in the business of accepting wagers and upon individuals engaged in receiving wagers for or on behalf of any other person in such business. 26 U.S.C. § 4411. The payment of this special tax is a condition precedent to the maintenance of a wagering business. 26 U.S.C. § 4901(a). Each person required to pay the special tax must also register with the IRS as required by 26 U.S.C. § 4412. Such registration is accomplished by filing a Form 11–C, Special Tax Return and Application for Registry-Wagering. Treas.Reg. § 44.4412–1. The Form 11–C is to be filed with the District Director of the IRS for the district in which the legal residence or the principal place of business of the person making the return is located. Treas.Reg. § 44.6091–1.

■ 5. Failure to comply with these statutes or the regulatory provisions thereunder is a violation of the internal revenue laws. Any property which has been used or intended for use in violation of the internal revenue laws is subject to forfeiture to the United States, and "no property rights shall exist in any such property." 26 U.S.C. § 7302.

■ 6. Due to a forfeiture proceeding's status as an *in rem* civil action, plaintiff need only sustain its burden of proof by a preponderance of the evidence. *United States v. One (1) 1975 Thunderbird*, 576 F.2d 834 (10th Cir.1978); *D'Agostino v. United States*, 261 F.2d 154 (9th Cir.1958), *cert. denied*, 359 U.S. 953, 79 S.Ct. 739, 3 L.Ed.2d 760 (1959).

■ 7. Circumstantial evidence alone is sufficient to connect money with a wagering operation. *United States v. $2,813.37*, 264 F.Supp. 394 (M.D.Pa.1966). A bookmaker's possession of a large amount of cash may justify an inference that the cash was used or intended for use in wagering. *United States v. $8,674*, 379 F.2d 946, 947 (7th Cir.1967), *vacated on other grounds sub nom. Stone v. United States*, 390 U.S. 204, 88 S.Ct. 899, 19 L.Ed.2d 1035 (1968), *on remand*, 393 F.2d 499 (7th Cir.1968), *aff'd*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971); *United States v. $4,298.80*, 179 F.Supp. 251 (D.Md. 1959); *United States v. Joseph*, 174 F.Supp. 539 (E.D.Pa.1959), *aff'd*, 278 F.2d

504 (3rd Cir.1960), *cert. denied*, 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960).

8. A sufficient supply of ready cash to meet the demands of the trade is necessary in conducting a wagering business. *United States v. $8,674, supra; One 1961 Lincoln Continental Sedan v. United States*, 360 F.2d 467 (8th Cir.1966); *United States v. $2,813.37, supra*.

■ 9. Plaintiff has established a *prima facie* case of forfeiture in that (a) Skrivanos was in the wagering business, (b) he had violated applicable internal revenue laws, and (c) the $6,500 seized from his residence was used or intended for use in connection with his wagering business.

10. Once a *prima facie* case has been established the government "is entitled to prevail unless countervailing evidence is offered ...." *United States v. $1,058 in United States Currency*, 210 F.Supp. 45 (W.D.Pa.1962), *aff'd* 323 F.2d 211 (3d Cir. 1963); *United States v. Leveson*, 262 F.2d 659 (5th Cir.1959); *United States v. Roberson*, 233 F.2d 517 (5th Cir.1956); *Stagner v. United States*, 197 F.2d 992 (5th Cir. 1952).

11. The government established a *prima facie* case for forfeiture by an overwhelming preponderance of the evidence. The only evidence offered to rebut same was claimant Skrivanos' testimony that the money represented savings accumulated over a period of time, which testimony the Court finds not credible.

A separate Order granting plaintiff's prayer for relief will be entered contemporaneously with this opinion.

### ORDER OF FORFEITURE

This forfeiture action filed by the United States of America was regularly scheduled for trial to the Court on April 24, 1984. The Government appeared by the Honorable Larry R. McCord, Assistant United States Attorney. The currency involved in the case was a total of $6,500.00. Mr. Theodore Skrivanos appeared in person with his attorney, Honorable Paul Johnson, of the firm of Wood, Smith & Snipper.

At the outset, the parties entered a stipulation of facts in the case and the Court received testimony by Internal Revenue Service Special Agents and other witnesses. Mr. Skrivanos testified on his own behalf admitting that he had, during the time established, been engaged in the wagering business but claimed the $6,500.00 in the case taken from a coat pocket in the closet belonging to him represented savings accumulated over a substantial period of time. Various other paraphernalia was seized under search warrant executed March 5, 1982. Numerous exhibits were received.

From the stipulation entered by the parties, ore tenus testimony, and exhibits, the Court, being well and sufficiently advised, entered a decision from the bench granting plaintiff's prayer for relief that the property be condemned as forfeited to the United States of America and the United States Marshal be directed to deliver custody thereof pursuant to applicable laws, rules and regulations of the United States Department of the Treasury.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the United States currency which is the subject of this action be, and the same hereby is, condemned as forfeited to the United States and the United States Marshal is directed to deliver custody of same, either in its present form or in the form of a check, to the Internal Revenue Service for disposition pursuant to applicable laws, rules and regulations of the United States Department of the Treasury.